[No. 1487.]

STATE OF NEVADA, EX REL. CHARLES A. JONES, PETITIONER, v. CHARLES E. MACK, JUDGE OF THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR ORMSBY COUNTY, RESPONDENT.

CONSTITUTION OF THE UNITED STATES—LAND CEDED BY STATE—JURISDICTION.—Under the constitution of the United States, article I, section 8, providing that congress shall have power to exercise exclusive legislation over the seat of government, "and to exercise a like authority over all places purchased by consent of the legislature of the state in which the same shall be, for erection of forts * * * and other needful buildings," land so purchased *ipso facto* falls within the exclusive jurisdiction of the United States.

IDEM—POSTOFFICES—FEDERAL COURT HOUSES—"NEEDFUL BUILDINGS."—Postoffices and federal court houses are "needful buildings," under the provisions of article I, section 8, of the constitution of the United States.

JURISDICTION—LAND CEDED BY STATE TO FEDERAL GOVERNMENT—RIGHT TO EXECUTE CRIMINAL PROCESS UPON.—Where a state cedes to the United States exclusive jurisdiction over land purchased as a site for a public building, "for all purposes except the administration of the criminal laws of this state," the state has no jurisdiction for the punishment of crimes committed on the purchased land, but only the right to execute criminal process thereon for the violation of the laws of the state committed elsewhere within the state.

ORIGINAL PROCEEDING. Application for a writ of *certiorari*, by the State, on the relation of Charles A. Jones, against Charles E. Mack, Judge of the First Judicial District Court of the State of Nevada, in and for Ormsby county. Proceedings annulled.

The facts sufficiently appear in the opinion.

*James F. Dennis, Wm. Woodburn* and *R. M. Clarke*, for Relator:

I. The offense charged in the indictment found by the state grand jury is an offense which is punishable under the laws of the United States. (U. S. Rev. Stats. 5319; *Sharon v. Hill*, 24 Fed. R. 726.)

II. The land in question was acquired by the United States by purchase, with the consent of the legislature of the state of Nevada.

III. The United States of America has exclusive jurisdiction of all crimes committed upon territory purchased by

the United States, by the consent of the legislature of the state, for the erection of forts, magazines, arsenals, dockyards and other needful buildings. (Const. U. S., art. I, sec. 1, par. 17; *Sharon* v. *Hill*, 24 Fed. R. 726; *Fort Leavenworth R. R. Co.* v. *Lowe*, 114 U. S. 525; 37 Fed. R. 887; Storey on Const., sec. 1216, 1224–7; Hare, Const. Legislation, vol. 2, 1142; Ordronaux, Const. Legislation, 516.)

IV. As to places purchased by consent of the legislature of the state, etc., no cession of jurisdiction or authority is needed. The exclusive jurisdiction of the government in all places purchased by the consent of the legislature of the state follows from the mere consent of the legislature of the state that the purchase may be made. And as to such places the authority of the federal government, under the constitution, is as supreme and exclusive as it is over the territory ceded by the states to become the seat of government of the United States.

V. By other needful buildings is not meant other forts, magazines, arsenals and dockyards, but buildings in addition to those specified which may be found needful in carrying on the operations of the government, such as custom houses, mints, postoffices, court houses, United States land offices, etc. (Ordronaux, Const. Legislation, 516; Hare, Const. Legislation, 142; *Sharon* v. *Hill*, 24 Fed. R. 726; *Fort Leavenworth R. R. Co.* v. *Lowe*, 114 U. S. 525; 4 Dillon, C. C. 380; 105 Cal. 509.)

VI. In 1885, by act of February 24th, the legislature of Nevada provided: "Section 1. The jurisdiction of this state is hereby ceded to the United States of America over all pieces or parcels of land within the limits of this state that may be selected or acquired by the United States, for the purpose of erecting thereon a public building or public buildings, for the accommodation of the United States courts, the postoffice and other government offices, and the United States shall have exclusive jurisdiction over the same during the time the said United States shall be or remain the owner thereof for all purposes except the administration of the criminal laws of this state and the service of any civil process therein or thereon." (Gen. Stats. 350.)

VII. To hold that the words "the administration of the

criminal laws of this state" mean that the state retains
jurisdiction to legislate for the place purchased for the erec-
tion of needful buildings, with the state's consent, is to con-
travene the provisions of the constitution of the United
States, and defeat the plain object which the legislature had
in view in passing the statute in question. The words "the
administration of the criminal laws of this state" must,
therefore, mean not the making of laws, but the execution of
them; not legislating for the ceded territory, but enforcing
the laws of the state applicable to that portion of its territory,
concerning which it has not ceded its jurisdiction, within the
limits of the territory, concerning which its jurisdiction had
been surrendered.

*James R. Judge*, Attorney-General, and *A. J. McGowan*,
District Attorney, for Respondent.

By the Court, MASSEY, J.:

This is an original application to the supreme court for a
writ of *certiorari*.

It appears, from the petition and affidavit filed herein, and
from the records and proceedings of the district court certi-
fied to this court, that the petitioner was indicted by the
grand jury of Ormsby county on the 11th day of December,
1896, for the crime of assault with a deadly instrument, with
intent to inflict upon the person of another bodily injury;
that the petitioner was duly arrested for the said offense and
taken before said district court; that, when required to plead
to said indictment, he interposed a special plea to the juris-
diction of the court, in which it was alleged that the offense
charged in said indictment was committed upon certain lands
in Carson City, Ormsby county, state of Nevada, purchased
by the United States, by consent of the legislature of the
state, for the erection of a court house, postoffice and other
needful public buildings, and that upon which lands there
had been erected, and the same were then used by the
United States, the said needful public buildings. To this
plea the district attorney demurred, alleging that the facts
set up in the plea did not oust the jurisdiction of the state,
and the district court sustained the demurrer, and required

the petitioner to plead to the merits of the indictment, and proceeded to set the action for trial for a certain day. It also appears, from the record of the district court, that the district attorney admitted that the alleged offense was committed upon lands purchased by the United States with the consent of the legislature of the state of Nevada, and that the United States had erected a postoffice and court house thereon. Counsel for respondent concede that the special plea to the jurisdiction of the district court, and the proceedings thereon, are regular and proper, and that the proceedings in this court upon *certiorari* are proper and regular, therefore no opinion is given on these questions.

From the facts above stated, the petitioner contends that the said district court has no jurisdiction over the alleged offense for the reason that the same was committed upon lands over which, under the provision of article I, section 8, of the federal constitution, the United States has the right to exercise exclusive jurisdiction.

Article I, section 8, of the federal constitution provides that "congress shall have power * * * to exercise exclusive legislation, in all cases whatsoever, over such district, * * * and to exercise a like authority over all places purchased by consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards and other needful buildings."

By act of congress, approved January 13, 1885 (U. S. Stats. 1885, chap. 19, p. 181), the secretary of the treasury was authorized and directed "to purchase a site for, and cause to be erected thereon, at the city of Carson City, in the state of Nevada, a suitable building, * * * for the accommodation of the United States courts, postoffice; * * * *provided,* that no money to be appropriated for said building shall be available * * * until the state of Nevada shall cede to the United States exclusive jurisdiction over the same * * * for all purposes except the administration of the criminal laws of said state and the service of any civil process therein."

By an act of the legislature of the state of Nevada, approved February 24, 1885 (Stats. 1885, p. 40), the jurisdiction of the state was ceded to the United States, over all

lands selected or acquired by the United States, "for the pur-
pose of erecting thereon a public building or public buildings
for the accommodation of the United States courts,   *    *    *
and the United States shall have exclusive jurisdiction over
the same   *   *   *   for all purposes except the administra-
tion of the criminal laws of this state, and the service of any
civil process therein or thereon."

Section 5391 of the Revised Statutes of the United States
makes the offense, charged in the indictment found by the
state grand jury, punishable under the laws of the United
States, when committed in any place "ceded to and under
the jurisdiction of the United States."

The above are express provisions of state and federal law
bearing directly upon the question to be determined in this
action.

It has been held that when a purchase of land has been
made by the United States with the consent of the legislature
of the state, for any of the purposes enumerated in section
8, of article I, of the federal constitution, the land so pur-
chased, by the very terms of the constitution, *ipso facto*, falls
within the exclusive jurisdiction of the United States.  (*U.
S.* v. *Cornell*, 2 Mason, C. C. 60; *Sharon* v. *Hill*, 27 Fed. R.
726; *Fort Leavenworth R. R. Co.* v. *Lowe*, 114 U. S. 525; Story
on Constitution, secs. 1224–1227; Hare, Const. Law, pp.
1142–1145; Ordronaux, Const. Legislation, pp. 516, 517.)

The supreme court of the United States in the case of *Fort
Leavenworth R. R. Co.* v. *Lowe*, *supra*, uses the following lan-
guage:  " When the title is acquired by purchase by the con-
sent of the legislatures of the states, the federal jurisdiction
is exclusive of all state authority.  This follows from the
declaration of the constitution that congress shall have 'like
authority' over such places as it has over the district which
is the seat of government; that is, the power of 'exclusive
legislation in all cases whatsoever.'  Broader or clearer lan-
guage could not be used to exclude all other authority than
that of congress; and that no other authority can be exer-
cised over them has been the uniform opinion of federal and
state tribunals, and of the attorneys-general."

Counsel for respondent vigorously contend that the pur-
chase of the land in Carson City by the United States for

the purposes designated in the act of congress, approved January 13, 1885, above cited, does not come within the specific purposes named in section 8 of article I of the federal constitution; that the purchase of land for the erection of court houses and postoffices by the United States, with the consent of the legislature of the state, does not, *ipso facto*, vest exclusive jurisdiction in the United States over such lands.   This contention is not tenable.

The federal constitution provides for ·a judicial department; for the establishment of postoffices and post roads, and buildings are "needful" for the administration of justice, and for postoffices.   It is too narrow construction of section 8, article I, of the constitution to limit the exercise of exclusive jurisdiction by the United States over lands purchased for the specific purposes enumerated therein.   Under such construction the use of the words ·" and other needful buildings" adds nothing to that section.

Ordronaux, in his work on Constitutional Legislation, *supra*, says:  "The functions of the general government demanding the establishment of forts, magazines and dockyards, and the erection of postoffices, court houses, mints and other buildings in various parts of the United States, the framers of the constitution made provisions accordingly for acquiring the necessary sites.   It was contemplated that such places should be purchased either from states or individuals, and as it was necessary for their better government that congress should have exclusive legislation over them, the clause requiring the legislature of the state making the cession was introduced in order to avoid conflicts of jurisdiction."   See, also, *Sinks* v. *Reese*, 19 Ohio St. 306; *Sharon* v. *Hill, supra; Foley* v. *Shriver*, 81 Va. 568; *People* v. *Collins*, 105 Cal. 504; Hare, Const. Law, pp. 1141–1143.

Counsel for respondent cite *In re Kelly*, 71 Fed. R. 545, as strongly supporting their position.   That was a case wherein the state of Wisconsin, by legislative enactment, ceded to the United States jurisdiction over certain lands purchased by the United States for the purpose of locating a "National Asylum for Disabled Volunteer Soldiers."   The legal title to said lands was not vested in· the United States, but was

vested in a corporation created by an act of congress for the purpose.

The court (*In re Kelly, supra*), in discussing the right of the United States to exercise exclusive jurisdiction over lands purchased by the United States with the consent of the legislature for the purposes enumerated in section 8, article I, says: "The rule thus stated, whereby legislative consent operates as a complete cession, is applicable only to objects which are specified in the above provision, and cannot be held to so operate, *ipso facto*, for objects not expressly included therein. Whether it rests in the discretion of congress to extend the provisions not specifically enumerated, although for national purposes, upon declaration as 'needful buildings,' and thereby secure exclusive jurisdiction, is an inquiry not presented by this legislation."

The court then argues that the purchase of lands by the United States with the consent of the legislature of the state, irrespective of its use, does not vest in the United States exclusive jurisdiction over the same; and that in determining the question of jurisdiction, under purchases not made for the specific purposes enumerated in the federal constitution, the courts must ascertain from the enactments whether it was intended that the United States should exercise exclusive jurisdiction over such lands because of any need or requirement of the exercise of the same. Applying this rule to the Kelly case, above cited, the court therein properly held that the United States did not have the right to exercise exclusive jurisdiction over the land purchased for the establishment of the "National Asylum for Disabled Volunteer Soldiers," for the reason there was a want of affirmative showing of any congressional intention to secure exclusive jurisdiction, and the provisions of the law tended to show that such jurisdiction was neither intended nor wanted, otherwise the legal title to the lands would have been taken in the United States.

The case at bar is clearly distinguishable from the Kelly case, *supra*. The lands purchased under the act of January 13, 1885, in Carson City, for the purposes specified therein, were so purchased for the erection of "needful buildings," within the meaning of section 8 of article I of the federal constitution. This is clearly manifest from the necessity of

the proper exercise of the rights, powers and duties, under the constitution, of congress to establish postoffices and post roads, and to create and maintain federal courts. The legislative intention that such purchase was made under said section 8 is also clearly manifest from the condition of the act of January 13, 1885, prohibiting the expenditure of any portion of the money appropriated thereunder, until the state of Nevada had ceded to the United States "exclusive jurisdiction" over such lands, and from the act, and the title thereof, of the legislature of Nevada, approved February 24, 1885, above cited, ceding to the United States "exclusive jurisdiction" over such lands. Also, the legislature of Nevada, by an act thereof, approved January 18, 1883, consenting to the purchase of lands within said state by the United States, ceded "jurisdiction" (not exclusive) to the United States over such lands, and attempted by an express proviso therein to retain "concurrent jurisdiction." (Stats. 1883, 13.) Considering this act with act of congress of January 13, 1885, and with the act of the legislature of Nevada of February 24, 1885, above cited, it is also clearly manifest that the attempt, under the act of 1883, to retain concurrent jurisdiction in the state was regarded by congress as in contravention of the provisions of article I, section 8, of the federal constitution, as no purchase or appropriation for the purposes of the act was made thereunder, and until after the act of February 24, 1885, became operative.

Counsel for respondent further contend that the proviso of the act of February 24, 1885, ceding exclusive jurisdiction of the state to the United States, "except the administration of the criminal laws of the state," reserves to the state all criminal jurisdiction. This is also not tenable. If the purchase was made, as has been held in this opinion, under the provisions of article I, section 8, of the federal constitution, any attempt on the part of the legislature to retain jurisdiction in the state over the lands so purchased would be in contravention of said section, and therefore void. Considering the legislative intention manifested in the various acts, above cited, and that congress and the legislature must have had in view the provisions of article I, section 8, of the federal constitution in the passage of said acts, a reasonable

and fair construction to be placed upon the provision reserving to the state the "administration of the criminal laws" thereof, is simply the reservation to the state of the right to execute criminal process upon the lands purchased for violation of the laws of the state, committed within the state, and without the purchased lands. Giving the construction contended for would, in effect, destroy the purpose of the act.

It is a well-settled rule of construction that, when a statute is of doubtful meaning, the first thing is to ascertain the intention of the legislature that passed the act, and that intention must be found, if possible, within the act itself; outside the statute, courts will consider the mischief it was intended to suppress, or, as the case may be, the objects or benefits thereby to be obtained. (*Maynard* v. *Johnson*, 2 Nev. 25.)

From the act itself it is clear that the legislature intended to consent to the purchase of lands within the state by the United States for the purpose of erecting "needful public buildings," and to cede "exclusive jurisdiction" over the same to the federal government, under the terms of article I, section 8, of the federal constitution. Going outside of the statute, what object was thereby to be attained? That the legislature intended to consent to the purchase of lands within the state by the United States for the purpose of erecting thereon "needful public buildings," and thereby vest in the United States exclusive jurisdiction over the same. No other object could be attained, for the United States has the right to acquire lands within the state for needful buildings by other methods than the one provided in the constitution. The United States may purchase lands within the state, without the consent of the legislature thereof, but when so purchased, the possession is simply that of an ordinary proprietor, and the state retains jurisdiction over the same, within the limits of its authority. (*Fort Leavenworth R. R. Co.* v. *Lowe, supra; United States* v. *Connell, supra.*)

Therefore the act of the legislature approved February 24, 1885, considered in the light of well-established rules of construction—from the language of the act itself and from the object to be obtained thereby—is simply the consent of the

state to the purchase of lands within its limits, by the United States for the purposes enumerated in said article I, section 8, of the constitution, and such purchase vested exclusive jurisdiction over said lands in the United States.

The condition in the act of cession cannot be construed to mean that the state should reserve jurisdiction for the punishment of crime committed upon the purchased land. The apparent object of the condition was to prevent these lands from becoming the sanctuary for fugitives from justice for acts done within the jurisdiction of the state.

In *Fort Leavenworth R. R. Co.* v. *Lowe, supra,* the supreme court of the United States, in commenting upon such provisions, uses the following language: " Now, there is nothing incompatible with the exclusive sovereignty or jurisdiction of one state that it should permit another state in such cases to execute its process within its limits. And a cession of exclusive jurisdiction may well be made with a reservation of this nature, which then operates only as a condition annexed to the cession, and as an agreement of the new sovereign to permit its free exercise as *quoad hoc* his own process."

For these reasons, the proceedings of the district court must be and are annulled.

No opinion is given upon the sufficiency of the indictment, as that question is not properly before this court.