The defendant below (plaintiff in error here), Charles H. Gill, was convicted in the criminal court of Davidson county of the offense of petit larceny, and was sentenced to 60 days in the county workhouse. He made a motion for a new trial, which was overruled, and he has appealed to this court and has assigned errors.
Before the case was called for trial in the court below the defendant filed a plea in abatement to the jurisdiction of the court as follows:
"Comes defendant in person and for plea says that the venue of the crime with which he is charged is on the territory of the United States of America commonly known as the powder plant, and that said territory or property is within the exclusive jurisdiction of the courts of the United States within the meaning of sections 82, 83, and 90 of Shannon's Code of Tennessee, and not within the jurisdiction of the criminal court of Davidson county, Tenn.; it being used for public purposes."
This plea was sworn to by the defendant as required by law. The state joined issue on said plea, and in lieu of evidence a stipulation containing the following facts was entered into by the Attorney General for the state and counsel for the defendant, and presented to the court:
"In this case, on the issues by the indictment, and the plea in abatement thereto, it is stipulated as follows:
That the crime with which this defendant is charged was committed on territory purchased by the United States of America on which has been erected a munition plant known as the Old Hickory powder plant in Hadleys Bend, Davidson county, Tenn.
This land comprises numerous tracts purchased from various individuals who separately conveyed their respective tracts to the United States of America on or about January, 1918, and that about the time of said purchase, or shortly thereafter, the Todd Bond Mortgage Company, who prepared the abstracts for the owners of this land, prepared a map or plat showing the various tracts, which map or plat is attached hereto as Exhibit A to this stipulation.
"This map or plat was found about two months ago on a shelf in the office of the county judge of Davidson county, it having been taken to this office for the purpose of asking the proper county authorities to formally close a public road, the road to be closed being particularly marked on the said map. This road was closed, and the map was not intended to serve any further purpose. That this map was not marked filed by the county court clerk or any one else. That it was not filed, or intended to be filed as a compliance with chapter 110, Acts of Tennessee 1895, or any other provision or condition of law precedent to the surrender of the jurisdiction of the state of Tennessee and its sovereignty over said lands in the United States of America. That it was not placed, or filed, by any one authorized by the United States of America for the purpose of complying with said statute or the laws of the state of Tennessee. That there has been no authority or act of the government of the United States of America showing any purpose or intention of assuming jurisdiction over the land in question. On the contrary, the United States of America has continually recognized, and now recognizes, the complete sovereignty and jurisdiction of the state of Tennessee over said land
It is also agreed that one or more tracts shown on said plat have never been conveyed to the United States government; therefore the said plat does not accurately describe the *Page 638 
lands purchased by the United States of America."
The trial judge overruled the plea in abatement. Thereupon the defendant entered a plea of guilty to the charge of petit larceny, for which he was sentenced to 60 days in the county workhouse, as before stated.
The sole question presented by the assignments of error is: Did the criminal court of Davidson county have jurisdiction of the offense committed by the defendant, or was the jurisdiction exclusively in the federal court?
Article 1, § 8, subsec. 17, of the Constitution of the United States provides that the Congress shall have power to —
"exercise exclusive legislation in all cases whatsoever, over such district (not exceeding ten miles square), as may, by cession of particular states, and the acceptance of Congress, become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the Legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings."
The rule is well settled that, if a crime is committed within the boundaries of such lands so ceded or purchased by the United States with the consent of the state, the federal courts have jurisdiction of a prosecution therefor to the exclusion of the state courts. 8 R.C.L. § 65; State v. Tully, 31 Mont. 365,78 Pac. 760, 3 Ann. Cas. 824, and note; State v. Mack, 23 Nev. 359,47 Pac. 763, 62 Am. St. Rep. 811; Baker v. State,47 Tex. Cr. 482, 38 S.W. 1122, 122 Am. St. Rep. 703, 11 Ann. Cas. 751. Hence any statute of a state that attempts to confer its jurisdiction of such territory must necessarily be unconstitutional and void. State v. Kelly, 76 Me. 331, 49 Am. Rep. 620. But the United States, as a mere proprietor of land which is situated within the limits of a state and which was acquired by purchase without the consent of the Legislature, has no paramount authority derived from ownership of the soil. 8 R.C.L. § 65; In re O'Connor,37 Wis. 379, 19 Am. Rep. 765.
It appears from the stipulation of counsel that the crime with which the defendant was charged was committed on territory purchased by the United States of America on which has been erected a munition plant known as the Old Hickory powder plant in Hadleys Bend, Davidson county, Tenn. This territory is comprised of numerous tracts from various individuals who separately conveyed their respective tracts to the United States of America on or about January, 1918. It is further stipulated that there has been —
"no authority or act of the government of the United States of America showing any purpose or intention of assuming jurisdiction over the land in question. On the contrary, the United States of America has continually recognized, and now recognizes, the complete sovereignty and jurisdiction of the state of Tennessee over said land"
By section 1 of chapter 110 of the Public Acts of the General Assembly of 1895 it is provided as follows:
 "That pursuant to article (1) one, section eight, clause seventeen, of the Constitution of the United States, consent to purchase is hereby given, and exclusive jurisdiction ceded to the United States, over and with respect to any lands within the limits of this state, which shall be acquired by the United States for any of the purposes described in said clause of the Constitution of the United States; said jurisdiction to continue as long as the said lands are held and occupied by the United States, for public purposes, reserving, however, to this state, a concurrent jurisdiction for the execution upon said lands of all process, civil or criminal, lawfully issued by the courts of the state, and not incompatible with the cession: Provided, that an accurate map or plan, and description by metes and bounds of said lands shall be filed in the county court clerk's office of the county in which the same are situated; and provided, that the state reserves the right to tax all property of any railroad, or other corporation, having a right of way, or location over or upon the said lands."
In State v. Tully, supra, it was held that, where a state cedes to the United States lands for forts, etc., reserving concurrent jurisdiction to serve state process, civil and criminal, in the ceded place, such reservation merely operates as a condition of the grant, and does not defeat the exclusive jurisdiction of the United States over such place, and the state courts have no jurisdiction of the crimes committed. But, unless Congress takes jurisdiction of territory thus ceded or purchased, by exercising its exclusive right of legislation over the place, the jurisdiction of the state to support and maintain its laws and to punish crimes committed within its acknowledged jurisdiction and limits may be asserted and maintained. 8 R.C.L. § 65.
We think that, in order for the United States to acquire exclusive jurisdiction over the territory in question, the proviso in the cession act of 1895 must be complied with; that is, an accurate map or plat, and description by metes and bounds of said lands, shall be filed in the county court clerk's office of the county in which the same are situated. This was not done. The stipulation shows that a map or plat showing the various tracts of land composing said territory had been made, and was taken by some one, the stipulation does not disclose when or by whom, to the office of the county judge of Davidson county for the purpose *Page 639 
of asking the proper authority to formally close a public road, the road to be closed being particularly marked on said map; that the map was not intended to serve any further purpose, and was not marked filed by the county court clerk, nor was it intended to be filed as a compliance with chapter 110 of the Acts of 1895.
It is insisted by counsel for the defendant that the act of 1895 is invalid, but he states no valid reason why it is invalid. It is next insisted that, if the act is valid, then the provision with reference to filing an accurate map or plan, and a description of said lands by metes and bounds in the county court clerk's office of the county in which the same are situated, is merely directory.
We do not think so. We see no reason why the state, through its lawmaking body, would not have the right to prescribe this as a condition precedent to the vesting of exclusive jurisdiction in the United States of lands purchased by them for public uses. The condition is reasonable, and is demanded by every consideration of public policy. Without such map, properly verified and filed, it would be difficult to establish the venue in many cases. The filing of such map or plan, together with a description of the lands purchased, is vitally important, in that the public may know where the state's jurisdiction ends and the federal jurisdiction commences.
It would seem that the federal government has given this construction to the act of 1895; for it is stipulated that it has taken no action showing a purpose or intention of assuming jurisdiction over the territory in question. On the contrary, it has continually recognized, and now recognizes, the complete sovereignty and jurisdiction of the state over the same.
We are of the opinion that there is no error in the judgment, and it will be affirmed.
 *Page 864