STATE ex rel. Dwight LAUGHLIN,
Petitioner,

v.

Michael BOWERSOX, Respondent.

No. SC 90542.

Supreme Court of Missouri,
En Banc.

Aug. 23, 2010.

Rehearing Denied Aug. 26, 2010.

Ginger Gooch, Husch Blackwell Sanders LLP, Springfield, for Petitioner.

Andrew W. Hassell, Attorney General's Office, Jefferson City, for Respondent.

MICHAEL A. WOLFF, Judge.

### Introduction

Dwight Laughlin was convicted and sentenced to prison in 1993 by the Newton County circuit court for burglary and property damage crimes occurring in the United States post office in Neosho. Under the United States Constitution, if a state cedes jurisdiction over federal property in the state, the United States has *exclusive* jurisdiction to hear cases involving offenses committed on that federal property.

When the United States acquired the land to build the Neosho post office, the state of Missouri by statute ceded jurisdiction over the land to the federal government. Article I, section 8, clause 17 of the United States Constitution deprives Missouri's courts of the authority to enforce state laws on this federal property.

Following his conviction, Laughlin filed a Rule 29.15 post-conviction motion, alleging that the circuit court lacked jurisdiction over him. He argued that his crimes occurring in the Neosho post office were within the exclusive jurisdiction of the United States. His claim was denied, and his counsel at the time did not raise the claim on appeal. More than fifteen years later, Laughlin, *pro se*, petitioned for a writ of habeas corpus. This Court issued a writ of habeas corpus to determine whether the criminal conviction was void because the state court lacked jurisdiction of the subject matter.[1]

The state asserts that the issue of jurisdiction was litigated years ago and that Laughlin is bound by the judgment and by his failure to raise the matter on appeal. In a criminal case in which the court lacked the authority to try the defendant, the defendant's failure to appeal the issue in the earlier proceeding cannot confer subject matter jurisdiction on a court whose jurisdiction was void from the beginning.

Laughlin is ordered discharged.

### Facts and Procedural History

Dwight Laughlin is currently serving an aggregate 40–year sentence for his 1993 convictions for first-degree burglary and first-degree property damage. As to the burglary count, the prosecutor charged that Laughlin "knowingly entered unlawfully in a building, located at 101 E. Hickory, Neosho, Missouri and owned by the United States Postal Service...." As to the property damage count, the prosecutor charged that Laughlin "knowingly damaged a safe, which property was owned by the United States Postal Service...." Laughlin also was charged as a prior and persistent offender. A jury found Laughlin guilty of the charged crimes, and Laughlin was sentenced to the department of corrections for 30 years on the burglary count and 10 years on the property damage count, with the sentences to be served consecutively.

Laughlin appealed his conviction, and while that appeal was pending, he filed a motion to vacate the judgment pursuant to Rule 29.15. In his Rule 29.15 motion, Laughlin raised the issue of lack of jurisdiction, arguing that "the trial court did

1. After it issued the writ on Laughlin's *pro se* petition, this Court appointed Ginger K. Gooch of Springfield to represent Laughlin in this Court. The Court thanks counsel for this *pro bono* service.

not have jurisdiction to try [his] case since it was a federal offense thereby preempting state court jurisdiction." The Newton County circuit court denied this claim because "[n]o evidence was adduced showing the offense was not a state offense or that the federal government had pre-empted jurisdiction." Laughlin then appealed the overruling of his Rule 29.15 motion. The court of appeals consolidated Laughlin's original appeal and the appeal of his Rule 29.15 motion, addressing each appeal separately. *See State v. Laughlin,* 900 S.W.2d 662, 664 (Mo.App.1995). On appeal of the Rule 29.15 motion, the sole point raised was that Laughlin received ineffective assistance of counsel. His appeal did not raise the issue of jurisdiction, and the court of appeals affirmed the order denying post-conviction relief. *Id.* at 668.

Laughlin filed a petition for writ of habeas corpus challenging the circuit court's jurisdiction in November 2009. After Laughlin sought relief in the circuit court and in the court of appeals, this Court granted a writ of habeas corpus in March 2010.

### The Circuit Court's Lack of Subject Matter Jurisdiction

 Subject matter jurisdiction is the authority of a court to hear and decide a case. Missouri circuit courts have subject matter jurisdiction over criminal cases un-

der article V, section 14 of the Missouri Constitution. *J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249, 253 n. 6 (2009). But no state, including Missouri, can grant subject matter jurisdiction to its courts to hear matters that federal law places under the "exclusive" jurisdiction of the federal courts. *Id.*

The United States purchased the Neosho post office in 1933 and continuously has owned it since then. Under Article I, section 8, clause 17 of the United States Constitution, the United States gains exclusive authority over the land if that jurisdiction is ceded by the state; this provision grants to the federal government:

> To exercise exclusive Legislation [i.e., jurisdiction] in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.

By enacting section 12.010, RSMo 2000,[2] the state of Missouri consented to the federal government's purchase of the land to establish and maintain a post office in Neo-

---

2. Section 12.010, RSMo 2000, provides:

 The consent of the state of Missouri is given in accordance with the seventeenth clause, eighth section of the first article of the Constitution of the United States to the acquisition by the United States by purchase or grant of any land in this state acquired for the purpose of establishing and maintaining post offices....

 Current section 12.010 originally was enacted with slightly different language in 1889. *See* 1889 Mo. Laws 51, section 39.

 For lands purchased prior to February 1, 1940, the United States is presumed to have

accepted jurisdiction. *See* 40 U.S.C. section 3112(c) (formerly 40 U.S.C. section 255), which sets out a presumption against acceptance of jurisdiction by the United States. However, this statute does not apply to land acquisitions by the United States prior to February 1, 1940. *See United States v. Heard,* 270 F.Supp. 198, 200 (W.D.Mo.1967) (citing *Fort Leavenworth R.R. Co. v. Lowe,* 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264 (1885)) ("Since the lands were acquired by the United States prior to February 1, 1940, acceptance of the jurisdiction by the United States is presumed.").

sho. Section 12.020, RSMo 2000,[3] granted and ceded jurisdiction over that land to the United States, reserving to the state the right to serve process but not to prosecute crimes committed on the property.

■ Missouri does not have jurisdiction over land or a building that is under the exclusive jurisdiction of the United States. As James Madison explained in *The Federalist No. 43*, Article I, section 8, clause 17, in addition to providing for purchase of land for the "seat of government," also explicitly provided for other land to be purchased for federal purposes for "needful buildings" and that the state in which the land was located had to agree by cession of the land. The necessity for federal jurisdiction of such land and buildings, Madison said, "is not less evident" than the need for federal control of the seat of government. "The public money expended on such places, and the public property deposited in them, require that they should be exempt from the authority of the particular State," he said. The federal-state, or federalist, principle is preserved by the need for the state's agreement. "All objections and scruples are here also obviated by requiring the concurrence of the States concerned in every such establishment." THE FEDERALIST No. 43 (James Madison).

■ Article I, section 8, clause 17 has since been interpreted by state and federal courts in the manner envisioned by Madison. The United States Supreme Court has noted that a state must cede jurisdiction to the United States for the state no longer to have jurisdiction; it is not enough for the United States simply to purchase land within the state. "The consent of the states to the purchase of lands within them for the special purposes named, is, however, essential, under the constitution, to the transfer to the general government, with the title, of political jurisdiction and dominion," the Court said in *Fort Leavenworth R.R. Co. v. Lowe*, 114 U.S. 525, 531, 5 S.Ct. 995, 29 L.Ed. 264 (1885). *"Where lands are acquired without such consent, the possession of the United States, unless political jurisdiction be ceded to them in some other way, is simply that of an ordinary proprietor." Id.* (emphasis added).

The United States Supreme Court has held a state's cession of jurisdiction does not have to be absolute. *See, e.g., Surplus Trading Co. v. Cook*, 281 U.S. 647, 652, 50 S.Ct. 455, 74 L.Ed. 1091 (1930) ("[T]he state undoubtedly may cede her jurisdiction to the United States and may make the cession either absolute or qualified as to her may appear desirable, provided the qualification is consistent with the purposes for which the reservation is maintained and is accepted by the United States. And, where such a cession is made and accepted, it will be determinative of the jurisdiction of both the United States and the state within the reservation.").

■ "When the United States acquires title to lands, which are purchased by the consent of the legislature within which they are situated, ... *the Federal jurisdiction is exclusive of all State authority." United States v. Unzeuta*, 281 U.S. 138, 143, 50 S.Ct. 284, 74 L.Ed. 761

---

**3.** Section 12.020, RSMo 2000, provides:

The jurisdiction of the state of Missouri in and over all land acquired as provided in section 12.010 is granted and ceded to the United States so long as the United States owns the land; except that there is reserved to the state of Missouri, unimpaired, full authority to serve and execute all process, civil and criminal, issued under the authority of the state within the lands or the buildings.

Current section 12.020 originally was enacted with slightly different language in 1883. *See* 1883 Mo. Laws 129, section 1.

(1930) (emphasis added). "[T]he state may impose conditions which are not inconsistent with the carrying out of the purpose of the acquisition." *Id.* Under section 12.020, "the state retained only the right to serve civil and criminal processes within the land." *United States v. Heard,* 270 F.Supp. 198, 200 (W.D.Mo.1967). The United States, therefore, has exclusive jurisdiction for all crimes occurring on the Neosho post office's land.[4] *See* 21 Am. Jur.2d section 445: *Offenses committed within state on land owned by federal government* (citing state as well as federal cases, *e.g., State v. Mack,* 23 Nev. 359, 47 P. 763 (Nev.1897) (holding that the state had no jurisdiction to prosecute crimes where the United States had exclusive jurisdiction); *People v. Mouse,* 203 Cal. 782, 265 P. 944 (Ca.1928) (same)).

*The Federalist No. 43* and these cases make it clear that the state of Missouri could have chosen not to cede criminal jurisdiction to the United States. If the state had not done so, the state of Missouri could prosecute Laughlin for burglary and property damage just as if he had committed his crimes on any other property in the state. *See Lowe,* 114 U.S. at 531, 5 S.Ct. 995. By enacting section 12.020, however, the state chose to give exclusive federal jurisdiction over the Neosho post office, reserving only the right to serve civil and criminal process. *See Heard,* 270 F.Supp. at 200. No reservation was made for crimes occurring on the land. Therefore, the state of Missouri had no jurisdiction to prosecute Laughlin in this case.

The state argues that it has jurisdiction over Laughlin because his *mens rea* to commit his crimes was formed before he stepped onto the Neosho post office's land and because the results of his crime affected events in the state of Missouri. Section 541.191.1, RSMo Supp.1993, provides:

> This state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which such person is legally accountable if:
>
> (1) Conduct constituting any element of the offense or a result of such conduct occurs within this state....

The state asserts that Laughlin's possession of the instrumentalities of his crime— a scanner set to the Neosho police frequency, a flashlight, a crowbar, a pipe wrench, screwdrivers, a hammer and a metal punch—shows that he formed the "knowingly" element of burglary and property damage while in the state of Missouri. But the statute requires "*conduct* constituting any element of the offense," and a defendant's *mens rea* is not conduct, nor is possession of the instrumentalities of his crime an element of the offense. The state also notes that Laughlin's crimes resulted in the local police being summoned to the post office to arrest Laughlin and that the burglary would have affected the state of Missouri.

Under the Supremacy Clause of the United States Constitution, no state can enact a law that infringes on the su-

---

4. *See also* Op. Atty. Gen. No. 24, Donnelly, Jan. 19, 1953 (sections 12.010 and 12.020 divest the state of Missouri of jurisdiction of criminal violations occurring on land condemned for purpose of establishing a hospital); Op. Atty. Gen. No. 24, Donnelly, Feb. 20, 1953 (sections 12.030 and 12.040 give the United States exclusive criminal jurisdiction of crimes committed on Weldon Springs area and Synthetic Fuels Demonstration Plant acquired partially by condemnation and partially by purchase); Op. Atty. Gen. No. 93, Waldo, Mar. 6, 1953 (sections 12.030 and 12.040 indicate that the land area embraced by Fort Leonard Wood, including a portion of Highway 17, is under the exclusive criminal jurisdiction of the United States).

premacy of the federal government.[5] In this case, the federal government has been given exclusive jurisdiction over the land of the Neosho post office. This jurisdiction extends to all crimes committed on such land. The state's reading of section 541.191.1 as allowing the state of Missouri to prosecute Laughlin—simply because he may have acquired the instrumentalities of his alleged acts while in Missouri and formed the "knowingly" *mens rea* to violate the law while in Missouri or because Laughlin's actions affected the state of Missouri in some way—usurps the federal government's exclusive jurisdiction of the post office's land.[6]

■ A Missouri statute cannot grant subject matter jurisdiction to its courts for cases that are within the exclusive jurisdiction of the federal courts. The circuit court had no jurisdiction to try Laughlin for these crimes.

## Laughlin's Habeas Claim is Not Procedurally Barred

■ "Relief in habeas corpus is available 'when a person is held in detention in violation of the constitution or laws of the state or federal government.'" *State ex rel. Zinna v. Steele*, 301 S.W.3d 510, 516 (Mo. banc 2010) (quoting *State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 214 (Mo. banc 2001)). Rule 29.15 and Rule 24.035 post-conviction motions for relief are "designed to provide a 'single unitary, post-conviction remedy, to be used in place of other remedies,' including the writ of habeas corpus." *Jaynes*, 63 S.W.3d at 214 (quoting *Wiglesworth v. Wyrick*, 531 S.W.2d 713, 715–16 (Mo. banc 1976)) (emphasis omitted). However, subsequent habeas relief is not barred when the petitioner can demonstrate:

> (1) a claim of actual innocence or *(2) a jurisdictional defect* or (3)(a) that the procedural defect was caused by something external to the defense—that is, a cause for which the defense is not responsible—and (b) prejudice resulted from the underlying error that worked to the petitioner's actual and substantial disadvantage.

*Zinna*, 301 S.W.3d at 516–17 (quoting *Brown v. State*, 66 S.W.3d 721, 725 (Mo. banc 2002)) (emphasis added).

■ The state, however, argues that because Laughlin previously raised his jurisdictional claim in a Rule 29.15 motion, he now is barred from bringing his claim through a subsequent petition for habeas corpus. Rule 29.15(b) (1993), however, states that the rule "provides the exclusive

---

**5.** The Supremacy Clause of the United States Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding.

U.S. CONST. Art. VI, cl. 2.

**6.** Missouri statutes cannot apply in an area under the exclusive jurisdiction of the federal government. If Laughlin's state of mind was to violate the law, it was to violate federal statutes making it a crime to burglarize and damage federal property. As such, the state's argument, which asserts that Laughlin's actions while in the state of Missouri constituted at least attempted first degree burglary, also must fail. The federal statutes are 18 U.S.C. section 2115 (1993) (burglary, punishable by up to five years in a federal prison); 18 U.S.C. section 1361 (1993) (federal property damage, punishable by up to one year if the damage is less than $100 and up to ten years in federal prison if the damage exceeds $100).

procedure by which such person may seek relief *in the sentencing court*." (Emphasis added.) This Court is not the sentencing court. Further Rule 91.06, the rule for habeas corpus, allows for a judge to issue a writ of habeas corpus for any person who illegally is confined or restrained of liberty. In this case, Rule 29.15(b) (1993) required that if a Rule 29.15 movant also was seeking an appeal of his or her conviction, then his or her Rule 29.15 motion was required to be filed within 30 days after filing the transcript in the appeal. When Laughlin chose to challenge the circuit court's judgment during this time period, a Rule 29.15 motion was his exclusive means of relief in the sentencing court at that time. Now that this time period has passed, he may seek a writ of habeas corpus under Rule 91.06 to challenge his illegal confinement under the judgment of a court that lacked subject matter jurisdiction.

▮▮▮▮ The parties do not cite, and the Court is unable to find, any criminal case that has held that the parties in the litigation—the state and its defendant—can confer subject matter jurisdiction on a court that does not have it.[7] If it were otherwise, habeas claims alleging lack of jurisdiction would never be allowed to pro-

---

7. In civil cases, courts have allowed collateral attacks in some cases involving jurisdictional issues but not in others. For example, the United States Supreme Court has allowed a civil state court judgment to be attacked collaterally where a federal court had exclusive jurisdiction over the area. *See Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (holding that where Congress had given exclusive jurisdiction to a federal bankruptcy court, the state court's judgment in that area is subject to collateral attack). *See also* 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE sec. 4428 (2d ed. 2002) ("State judgments may prove somewhat more vulnerable than federal judgments to defeat in subsequent federal litigation. So long as the lack of subject-matter jurisdiction is simply a matter of state law, it is clear that a federal court should accord the res judicata effects dictated by state law. Violation of exclusive federal jurisdiction, however, may leave a state judgment vulnerable to collateral attack.").

In *Durfee v. Duke,* 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963), the United States Supreme Court held that a state court civil judgment resolving a property dispute between two private parties could not be attacked collaterally by one of the parties who fully had litigated the matter. *Durfee* involved a fully litigated factual finding by a Nebraska court that it had subject matter jurisdiction because the disputed land was in Nebraska; this finding precluded Missouri courts from considering a collateral attack on the Nebraska court's jurisdiction on the factual basis that the disputed river-bottom land was in Missouri. This is not an exception that would apply in this case, nor is there any such exception found in criminal cases. Neither *Durfee,* nor this Court's decision in *Sexton v. Jenkins & Assocs., Inc.,* 152 S.W.3d 270 (Mo. banc 2004), can be applied to subject matter jurisdiction in criminal cases. *Durfee* and *Sexton* were civil cases, where it was appropriate to apply a preclusion doctrine to private parties who had engaged the court system fully on the question of jurisdiction. Laughlin's case, by contrast, was a criminal case. As between the civil parties, Durfee and Duke, enough is enough. The same cannot be said of Laughlin's case in which the state is characterizing the feeble attempt by Laughlin's counsel as full and fair litigation of an issue that is not subject to preclusion. The authority of a criminal court to deprive Laughlin of his liberty cannot be granted by a litigant's consent as inferred from his counsel's failure to appeal. Further, the *Durfee* court recognized the limitations of its decision by noting that any decision a court rendered as between the private parties did not affect any future litigation between the states. *Durfee,* 375 U.S. at 115, 84 S.Ct. 242 ("Nothing there decided, and nothing that could be decided in litigation between the same parties or their privies in Missouri, could bind either Missouri or Nebraska with respect to any controversy they might have, now or in the future, as to the location of the boundary between them, or as to their respective sovereignty over the land in question.").

ceed. Lack of jurisdiction, of course, is precisely what habeas corpus originally was intended to remedy. *See Ex parte Kearney,* 20 U.S. 38, 7 Wheat. 38, 5 L.Ed. 391 (1822). If a criminal judgment was entered by a court without jurisdiction to do so, such a proceeding always should be found to be void, whether determined on direct appeal or in a habeas proceeding.

**Conclusion**

■ Under the applicable law, the Neosho post office is within the exclusive jurisdiction of the United States. Laughlin's previous post-conviction motion on the matter does not preclude him from habeas relief here. A collateral attack of a state court's subject matter jurisdiction is allowed when the federal courts had exclusive jurisdiction over the matter. No preclusion doctrine can confer jurisdiction on a state court whose judgment was void from the beginning.

Laughlin was convicted by a state court without the jurisdiction to do so. Neither the passage of time nor his previous counsel's failure to raise the issue in an earlier appeal can suffice to confer jurisdiction on the Newton County circuit court. Laughlin is ordered discharged.

All concur.