Larry NANCE, Deceased; Sherry Nance, Personal Representative, Appellant,

v.

**MAXON ELECTRIC, INC.,**
Respondent.

**No. WD 74942.**

Missouri Court of Appeals, Western District.

Nov. 6, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 2012.

Application for Transfer to Supreme Court Denied April 30, 2013.

R. Edward Murphy, St. Louis, MO, for appellant.

Lisa A. Reynolds and Robert Kerr, St. Louis, MO, for respondent.

Before Division One: THOMAS H. NEWTON, Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Sherry Nance ("Sherry")[1] appeals from the Labor and Industrial Relations Commission's ("Commission") order denying a joint agreement to commute her deceased husband's workers' compensation permanent total disability benefits into a lump sum. Larry Nance ("Larry") died the day before a joint agreement to commute was re-filed with the Commission by the parties. The employer, Maxon Electric, Inc. ("Maxon"),[2] attempted to withdraw its support of the joint agreement based on Larry's subsequent death. The Commission determined that Larry's claim lost all of its value upon his death, such that nothing was left to commute into a lump sum, and therefore the Commission was legally prohibited from approving the agreement of

---

1. We will refer to Sherry Nance and Larry Nance collectively as "Nance." We will on occasion refer to Sherry Nance or Larry Nance by their first names to distinguish them from each other. Larry Nance was the injured worker in the underlying action.

Sherry Nance is the surviving spouse of Larry Nance. No disrespect or familiarity is intended by the use of their first names.

2. We refer to Maxon and its insurers jointly as "Maxon."

the parties. Because the Commission erred in its legal conclusion that it had no authority under section 287.390 to approve the joint settlement agreement, and because the Commission incorrectly found that it had no legal authority to approve the joint settlement agreement under section 287.530 in that it determined the present value of the future payments to be zero, we reverse.

## Factual Background [3]

Larry worked for Maxon when he was injured on December 12, 1989. Larry operated a hand-held grinder to grind plastic telephone parts. After experiencing pain and discoloration of his hands, Larry was diagnosed with Raynaud's disease [4] as well as Scleroderma.[5] In 1993, an administrative law judge ("ALJ") found that Larry's condition resulted from an occupational disease that rendered him permanently and totally disabled and awarded $145.38 per week in Permanent Total Disability ("PTD") benefits and related medical care for the remainder of Larry's life. The Labor and Industrial Relations Commission ("Commission") affirmed the award.

In 1994, the parties jointly filed with the Commission an "Application For Commutation of Future Benefits and Approval of Lump Sum Payment" of Larry's future weekly PTD benefits. The application requested approval of a lump-sum amount pursuant to 287.530 [6] and attached thereto was a "Stipulation for Compromise Lump–Sum Settlement." This request was denied by the Commission. In the denial, the Commission noted that there was no evidence as to Larry's life expectancy and no evidence of the current value of the future PTD payments. The Commission further found that approval of the settlement was not in Larry's best interests and found that there were no compelling or unusual circumstances, as required by section 287.530. Neither party appealed this determination.

In 2010, Maxon twice approached Larry about settling his future PTD weekly benefit payments by payment of a lump sum. In August 2010, after a thorough review of his medical records and condition, an analysis by a physician hired by Maxon determined that Larry had a life expectancy of thirteen years. On February 24, 2011 and May 6, 2011, Maxon offered to settle Larry's claim for a lump sum of $181,434.24.[7] Larry accepted Maxon's offer on May 19, 2011.

In June, 2011, Larry was diagnosed with cancer, which was unrelated to his work-related medical condition. On August 31,

---

3. We defer to the Commission's credibility determinations and the weight given to testimony. *Fendler v. Hudson Services*, 370 S.W.3d 585, 588 (Mo. banc 2012).

4. Larry had a severe case of Raynaud's disease, which restricted the circulation of blood to his fingers, resulting in deformation and ulcers of the skin.

5. Scleroderma is a rare, progressive disease that involves the hardening and tightening of the skin and connective tissues.

6. All statutory references are to RSMo 2000 as updated through the most recent cumulative supplement unless otherwise indicated.

7. This amount constituted twenty-four years of Larry's weekly PTD payments and was not reduced to present value. The record reflects that this is the amount proposed by Maxon to settle the claim, but it is not clear as to how Maxon arrived at that total figure, the twenty-four year life expectancy or why it was not reduced to present value. Certainly, any one person's life expectancy cannot be conclusively determined and one doctor's opinion that Larry's life expectancy was thirteen years would not have been binding on the parties or on the Commission if this had been a contested case.

2011, the parties filed a joint "Application for Modification of Award" requesting that the award be amended into a lump sum of $181,434.24 as settlement for future PTD benefits. This application was drafted and filed by Maxon, and it was signed and approved by all parties. On October 5, 2011, the Commission dismissed the joint application, citing a lack of jurisdiction to "modify" a final award. In its order, the Commission suggested that a request to commute the award of future PTD benefits under section 287.530 was the proper procedure to convert a final award of PTD benefits into a lump-sum settlement, as opposed to an application to modify an award based on a joint settlement agreement. While Nance argues that the prior filing did sufficiently state a request for commutation of the award under section 287.530, neither party timely appealed the October 5, 2011 dismissal of that filing by the Commission.

On October 27, 2011, a revised joint agreement entitled "Request to Commute Permanent Total Disability Payments into Lump Sum Award" was sent to the Commission by Maxon's counsel via overnight private delivery (FedEx).[8] The amount of the agreed upon lump-sum settlement remained $181,434.24. Attached to the request was the physician's certification of life expectancy of thirteen years. Also attached was an "Affidavit of Present Value" of the PTD benefits, showing that the agreed-upon amount was the present value of the future benefits if Larry lived for an additional twenty-four years, which was longer than his thirteen-year life expectancy.[9] The filing also indicated that Larry was undergoing chemotherapy for Stage Four lung cancer and that this was expected to further reduce his life expectancy. All parties signed and approved this agreement.

Later, on the afternoon that the revised settlement agreement was sent by Maxon to the Commission, Larry died. The morning after his death, the agreement was received by the Commission and filed. On November 14, 2011, upon learning of Larry's death, Maxon filed a request to "Withdraw Request to Commute Permanent Total Disability Payments into Lump Sum Payment." In that request, Maxon notified the Commission of Larry's death and alleged that under the Workers' Compensation Law,[10] no benefits were then due Larry or his survivors and alleged that the prior agreement was "moot." Attached to that filing was a "Suggestion of Death" and Larry's obituary. The obituary noted that he was survived by his wife, Sherry. On December 8, 2011, Sherry, as surviving spouse and personal representative of Larry's estate, filed her response to Maxon's request to withdraw the request to commute the award.

On February 2, 2012, the Commission entered an order denying the request to commute and denying Sherry's request to approve the settlement agreement. The Commission found that (1) under section 287.530, PTD benefits are to be commuted to present value, and (2) because of Larry's death, no future payments were due and therefore the present value of the future PTD benefits was zero. In so finding, the Commission reached the legal conclusion that "We *cannot* commute the

---

8. The parties in their briefing spend considerable time addressing the effect of this filing being delivered by private carrier as opposed to the United States Postal Service, including when it should be deemed to have been "filed" with the Commission. Because our holding in this case does not require a resolution of this issue, we offer no opinion on it here.

9. Once again, the amount was not reduced to present value.

10. Section 287.010 *et. seq.*

award for more than the present value of future installments" (emphasis added). This appeal follows.

## Standard of Review

■■■ This Court must affirm the Commission's decision unless it is not authorized by law or supported by competent and substantial evidence on the whole record. Mo. CONST. ART. V, SEC. 18. Section 287.495.1 provides that an appellate court reviews questions of law and that the Commission's decision should be modified, reversed, remanded, or set aside only if: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. "Questions of law are reviewed *de novo*." *Pierce v. BSC, Inc.*, 207 S.W.3d 619, 621 (Mo. banc 2006). This Court is not bound by the Commission's interpretation or application of the law; therefore, no deference is afforded the Commission's interpretation of a statute. *White v. Univ. of Missouri, Kansas City*, 375 S.W.3d 908, 910 (Mo.App. W.D.2012) (citations omitted).

■■■ "Worker's compensation law is entirely statutory, and when interpreting the law, we ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and, if possible, give effect to that intent." *Honer v. Treasurer of State*, 192 S.W.3d 526, 529 (Mo.App. E.D.2006) (citation omitted). Provisions of an entire legislative act should be construed together and, if reasonably possible, all of its provisions must be harmonized. *Edwards v. Hyundai Mo-*

*tor Am.*, 163 S.W.3d 494, 497 (Mo.App. E.D.2005). The law favors a statutory interpretation that tends to avert an unreasonable result. *Id.*

## Analysis

In Point One, the question is whether the Commission erred in denying the parties' joint request to commute because it found that it had no legal authority to consider the joint settlement under section 287.390. In Point Two, the question is whether the Commission had authority to approve the commutation under section 287.530, when it determined the settlement amount exceeded the present value of the future payments. Point Three is made moot by our holding in Points One and Two. Because Points One and Two rely on the interpretation of two statutes, for reference, we set out both sections at the outset.

Section 287.390.1,[11] relating to compromise settlements, states as follows:

> Parties to claims hereunder may enter into voluntary agreements in settlement thereof, but no agreement by an employee or his or her dependents to waive his or her rights under this chapter shall be valid, nor shall any agreement of settlement or compromise of any dispute or claim for compensation under this chapter be valid until approved by an administrative law judge or the commission, nor shall an administrative law judge or the commission approve any settlement which is not in accordance with the rights of the parties as given in this chapter. No such agreement shall be valid unless made after seven days from the date of injury or death. *An administrative law judge, or the commission,*

---

11. The language quoted is from the current version of this statute. Of relevance to the legal arguments in this case, in 2005 the legislature added the final sentence of this subsection, placed in italics, which restricts the discretion of the Commission to reject a settlement agreement. As discussed below, this becomes relevant to the issues because the work-related injury in this matter preceded the amendment to this statute.

*shall approve a settlement agreement as valid and enforceable as long as the settlement is not the result of undue influence or fraud, the employee understands his or her rights and benefits, and voluntarily agrees to accept the terms of the agreement.* (Emphasis added.)

Section 287.530, relating to commuting compensation, states as follows:

The compensation provided in this chapter may be commuted by the division or the commission and redeemed by the payment in whole or in part, by the employer, of a lump sum which shall be fixed by the division or commission, which sum shall be equal to the commutable value of the future installments which may be due under this chapter, taking account of life contingencies, the payment to be commuted at its present value upon application of either party, with due notice to the other, if it appears that the commutation will be for the best interests of the employee *or the dependents of the deceased employee,* or that it will avoid undue expense or undue hardship to either party, or that the employee *or dependent* has removed or is about to remove from the United States or that the employer has sold or otherwise disposed of the greater part of his business or assets. (Emphasis added.)

## The Commission erroneously determined that it had no authority to consider the agreement under section 287.390

■ In Point One, Nance argues that the Commission erred in its February 2, 2012 order by failing to exercise its authority to grant the October 28, 2011 joint Request to Commute Permanent Total Disability Payments Into a Lump Sum Payment because section 287.390.1, relating to compromise settlements, gives it authority to approve voluntary settlements entered into by the parties. Specifically, Nance argues that section 287.530 is the procedure for commutation of future PTD payments into a lump sum *when that issue is contested by either party* and that the parties to a dispute regarding the commutation of future PTD payments may settle their disagreement, which would place the settlement under the province of 287.390.

Maxon argues that the parties' settlement agreement [12] is invalid because the Commission never approved it, as is required under section 287.390.1. Specifically, Maxon argues that section 287.530, relating to commutation, is the sole means by which a final award for future PTD payments may be converted into a lump sum, that section 287.390 is only applicable to settlements of an original claim and therefore section 287.390 has no application to the commutation of payments after a final award has been made.

Maxon argues that section 287.390 is not applicable to the facts of this case, and that if it is, then the version of the statute in effect as of the date of the injury should be applied. As such, we first determine whether section 287.390 is applicable to the facts of this case and if so, which version of the statute is applicable. As set out above, under its express terms, parties may enter

---

12. Although Maxon describes it as a "negotiated proposed settlement," Maxon did not refer to it as a proposed agreement in the joint Application for Modification of Award filed with the Commission on August 31, 2011. In that application, which was drafted by Maxon, both parties asserted that "the employer and insurer reached an agreement with Larry Nance to modify the award granted by Judge Allen to commute the remainder of PTD benefits owed to a lump sum of $181,434.24, which represents twenty-four years of weekly payments of $145.38."

into voluntary agreements to settle claims. But the statute specifies that no agreement to waive the employee's right to benefits under the Workers' Compensation Law shall be valid, nor shall any agreement to settle a dispute or claim for compensation be valid until approved by an ALJ or the Commission. Section 287.390 further specifies that an agreement that is not in accordance with the rights of the parties shall not be approved. Further, if the post–2005 version of the statute is applicable, the Commission *shall approve* a settlement agreement as valid and enforceable as long as (1) the settlement is not the result of undue influence or fraud, (2) the employee fully understands his or her rights and benefits, and (3) the employee voluntarily agrees to accept the terms of the agreement.

Here, the settlement agreement did not purport to waive Larry's rights under the Workers' Compensation Law, nor is the agreement against the rights of the parties. It is thus not among those that cannot be approved. However, because it has not been approved by an ALJ or the Commission, it is not valid at this time. *Conley v. Treasurer of Missouri,* 999 S.W.2d 269, 274 (Mo.App. E.D.1999) (overruled on other grounds).

Based on the word "shall," we interpret the post–2005 version of section 287.390 to mean that the Commission does not have discretion to reject the parties' settlement agreement if it meets the three above requirements, unless it finds that the agreement was the result of undue influence or fraud or that the employee did not understand his or her rights and benefits or did not voluntarily agree to accept the terms of the agreement.

■ Maxon argues that, because the original claim in this matter was resolved in 1993 by a final and unappealed award from the Commission, the claim is final

and not subject to change or amendment. Obviously, Maxon did not hold this belief when it filed an application to commute the award to a lump-sum payment in 1994, or when it approached Larry about such a commutation at least twice in 2010. Maxon argues, and the Commission found, that section 287.390 only applies to settlements of the original claim and not to settlements of a commutation of future PTD payments. Such argument is inconsistent with the plain language of section 287.390, which does not restrict itself to an original proceeding. The section specifically includes "any agreement of settlement or compromise of *any dispute or claim for compensation*" (emphasis added). If this section were only applicable to the settlement of an original claim, the language regarding "any dispute" would be superfluous. "[I]t is 'presumed that the legislature did not insert idle verbiage or superfluous language in a statute.'" *Hargis v. JLB Corp.,* 357 S.W.3d 574, 587 (Mo. banc 2011) (citations omitted).

The interpretation argued by Maxon is also inconsistent with prior case law addressing the term "claim" under section 287.390. Specifically, this Court has found that the interpretation of "claim" to include disputes resolved informally through settlement agreements is consistent with the use of the word "claim" in section 287.390. *Grubbs v. Treasurer of Missouri,* 298 S.W.3d 907, 911 (Mo.App. E.D.2009); *Treasurer of Missouri v. Cook,* 323 S.W.3d 105, 109 (Mo.App. W.D.2010).

■ Maxon correctly argues that the final award of the Commission is binding. "Under section 287.495, the final award of the Commission is conclusive and binding on the parties unless either party appeals the award to the appellate court within thirty days." *Taylor v. Ballard R–II School Dist.,* 274 S.W.3d 629, 633 (Mo.App. W.D.2009). The Commission essentially

lacks statutory authority after a final award has been entered, and, thus, it cannot reconsider or modify an award. *Id.* at 634.

However, one exception to this general rule is found within section 287.470, which gives the Commission statutory authority to modify an award due to a change in the condition of the injured worker. *Buescher v. Missouri Highway and Transp. Comm'n,* 254 S.W.3d 105, 109, n. 6 (Mo. App. W.D.2008). The parties alleged in the original settlement that was submitted to the Commission that Larry's June of 2011 cancer diagnosis constituted a change in condition that gave the Commission authority to modify the final award in this case. However, in order to fall within the statute, the change in condition must be causally connected to the work-related injury. *Bunker v. Rural Elec. Co-op.,* 46 S.W.3d 641, 646 (Mo.App. W.D.2001). Because there is no allegation that Larry's cancer diagnosis was related to his work-related injury, this exception is inapplicable.[13]

▮ Nonetheless, sections 287.530, 287.241 and 287.470 all establish statutory exceptions to the finality of an award and provide the Commission with the statutory authority to amend or change a final judgment in limited circumstances. With the ability to amend or change an award comes the ability of the parties to reach a settlement of the amendment or change, subject to the approval of the Commission under section 287.390. *Roth v. J.J. Brouk & Co.,* 356 S.W.3d 786 (Mo.App. E.D.2011). Section 287.390 "*requires* agency approval of all types of settlements" not just settle-

ments of the original claim. *Id.* at 788 (emphasis in original).

▮ In this case, the applicable statute authorizing a change to a final award is section 287.530. This section provides that either party to a workers' compensation award may file an application with the Commission to commute the future disability benefits granted in a final award into a lump-sum payment. Once such an application is filed, upon notice to the other party, the Commission may hold a hearing to determine whether it should commute the future disability benefits granted in a final award and determine any applicable lump-sum amount. In contested cases, section 287.530 sets forth the issues the Commission must consider, under the facts presented, in determining whether to grant such a commutation and in determining the appropriate amount of the lump-sum payment. Without any agreement from Larry, Maxon could have filed with the Commission an application to amend or commute the future PTD payments into a lump sum, and, had it been able to meet its burden under the statute, the Commission would have had the authority to grant such a request without Larry's approval. Similarly, Larry could have applied, under the statute, to commute the future PTD payments into a lump sum without the consent or agreement of Maxon. Under either scenario, it would have been up to the proponent of the commutation to prove the elements set forth in the statute, and the Commission would have been required to follow the statutory guidelines in determining whether to approve the commutation and in determining the applicable lump-sum amount.

13. In Point Three, Nance argues that Larry's cancer diagnosis constitutes a change in condition granting the Commission authority to modify the prior final award. While this point is made moot by our holding in regard to Points One and Two, the fact that the cancer was not causally connected to the work-related injury would appear to remove this case from the application of section 287.470.

In short, section 287.530 grants the Commission the authority to commute future PTD payments into a lump-sum amount, even if the application comes after the award is final. Further, section 287.390 grants the parties the ability to reach an agreement to compromise or settle this dispute, subject to the approval of the Commission. To the extent that the Commission found that it did not have authority to consider the settlement agreement of the parties because the underlying award was final, the Commission erred as a matter of law.

Point One is granted.

### The Commission has the legal authority to consider the joint settlement agreement under section 287.530 even though the agreed-upon amount exceeded the present value of the future installments

 In Point Two, Nance argues that the Commission erred in denying the parties' joint request to commute because section 287.530 gave it express authority to grant the motion. The Commission denied the request because "the present value of future installments due under the award is zero" and the Commission "*cannot* commute the award for more than the present value of future installments." (Emphasis added).

Maxon argues that the Commission was correct in finding the present value of the future PTD payments to be zero and that the Commission lacked the authority to commute the payments for a lump sum that is either more or less than the present value of the future payments. Maxon argues that under 287.530 the Commission must determine the "commutable value"[14]

of the payments by determining the present value thereof, and that the Commission lacks the authority to approve an amount that is either more or less than this amount.

Maxon's argument before this Court is completely inconsistent with the agreement it drafted, entered into and filed before the Commission. In the agreement for commutation of the award in this case, Maxon agreed to pay the lump sum of $181,434.24 as a commutation of the future PTD payments due under the award. This amount was equal to the total payment of the weekly benefits for a period of twenty-four years, which was not reduced to present value. However, Maxon's own medical expert's affidavit, attached to the agreement, showed that Larry had a life expectancy of only thirteen years. Further, the agreement noted that Larry's cancer diagnosis would further reduce his life expectancy below the thirteen years set forth in the agreement. Under Maxon's argument, the Commission would have been without authority to approve the agreement as submitted, even if Larry had survived, because the agreement was not for the "commutable value" of the future PTD payments but was for *more* than the present value of the future payments under the stipulated facts.

A careful reading of section 287.530 establishes that this section sets forth the method for the Commission to determine the "commutable value" of future payments and the considerations that the Commission must apply in determining whether to grant or deny a request for commutation in a contested case. However, where, as here, the parties have reached a settlement agreement as to

14. The term "commutable value" is undefined in chapter 287. Section 287.530 gives some limited guidance and discusses taking into account life contingencies and reducing the amount to its present value, but it leaves the appropriate amount subject to the significant discretion of the fact finder.

these disputed issues, the Commission is to review the agreement under section 287.390, which governs approval or disapproval of settlements.

Maxon argues that the value of the future PTD payments became zero upon Larry's death because PTD payments terminate upon the death of the employee under section 287.200.2, which relates to the amount of PTD. However, Maxon cites no authority to support its assertion that the Commission loses authority to proceed with a commutation after an employee's death. This argument ignores the plain language of Section 287.530.1, which states in relevant part that compensation may be commuted

> if it appears that the commutation will be for the best interests of the employee *or the dependents of the deceased employee,* or that it will avoid undue expense or undue hardship to either party, or that the employee *or dependent* has removed or is about to remove from the United States . . . . (Emphasis added.)

■ The plain language of the statute indicates that the statute anticipates and allows dependents of a deceased employee to proceed with a commutation. This grants the Commission the authority to proceed with a commutation after the death of the employee. Maxon acknowledged at oral argument that it was aware of no purpose for the language in the statute dealing with the dependents of a deceased employee absent the Commission's ability to proceed with the action after the employee's death. "Statutes

should be construed in such a way as to avoid unreasonable or absurd results." *Great Rivers Habitat Alliance v. City of St. Peters,* 384 S.W.3d 279, 288 n. 7 (Mo. App. W.D.2012) (citation omitted). "An entire clause of the statute should not be relegated to the status of excess verbiage." *Schoemehl v. Treasurer of State,* 217 S.W.3d 900, 902 (Mo. banc 2007).[15]

Here, the settlement agreement requesting a commutation was jointly filed, with all parties agreeing and stipulating that the present value of the future PTD benefits award was $181,434.24.[16] In the agreement, both parties also waived their respective rights to a hearing, which further indicates an intent to form a binding agreement. The Commission was thus provided with a present value of Larry's future PTD benefits award, which was agreed to by the parties.

■ Once the Commission was presented with the parties' agreement, the Commission was bound by the authority granted it in section 287.390, which governs its consideration of voluntary settlements. As was noted above, the parties dispute which version of section 287.390 applies to this settlement agreement. If the amendment to the statute is substantive, then it cannot be applied retroactively; in that event, the Commission is bound to apply the statute in existence at the time of Larry's injury. *Goad v. Treasurer of Missouri,* 372 S.W.3d 1, 6–7 (Mo.App. W.D.2011). "For purposes of a retroactivity analysis, 'substantive law relates to the

15. Sherry makes no argument that she remained entitled, as a surviving spouse, to Larry's future PTD benefits under *Schoemehl* and its progeny, and we do not address or decide that issue. However, the potential application of *Schoemehl* may have been an issue that one or both of the parties considered when entering into the settlement in this case.

16. Though Maxon's doctor opined that Larry's life expectancy was thirteen years, if this had proceeded to a contested trial, Larry would have been free to bring in his own experts to opine as to his life expectancy and the present value of the future payments.

rights and duties giving rise to the cause of action.'" *Pierce v. State, Dept. of Social Services,* 969 S.W.2d 814, 822 (Mo.App. W.D.1998) (citation omitted). "Substantive statutes take away or impair vested rights acquired under existing law, or create a new obligation or impose a new duty." *Id.* "On the other hand, a statute is procedural or remedial in nature if it 'prescribes a method of enforcing rights or obtaining redress for their invasion.'" *Id.*

Here, the amendment in question alters the method by which the Commission approves a settlement. The underlying rights of the parties do not change, nor do the parameters of the settlement agreement change. In fact, the 2005 amendments to this section were in effect at the time the parties entered into the settlement agreement in this case. Because the parties' rights within the settlement agreement are not affected by the amendment to the statute, the 2005 amendment is procedural in nature and is applicable in this case.

■ As discussed *supra,* the current version of section 287.390.1 mandates through the use of the word "shall" that the Commission approve a voluntary settlement as long as (1) it is not the result of undue influence or fraud; (2) the employee understands his rights and benefits; and (3) the employee voluntarily agrees to accept the terms of the agreement.

The 2005 amendments to this statute had the effect of restricting the discretion of the Commission to reject a settlement agreement between the parties. Here, there are no facts, allegations or arguments that either party used undue influence or acted fraudulently with regard to reaching the settlement terms. Indeed, the parties obtained a life expectancy evaluation and agreed upon a settlement value that surpassed Larry's expected life. Larry evidenced that he understood and accepted his rights by signing the agreement. Further, there is no allegation or evidence that Larry was forced or coerced into accepting the terms of the agreement. Maxon was clearly aware that the agreement for a settlement amount of twenty-four years of payments far exceeded its doctor's opinion as to Larry's thirteen-year life expectancy, and Maxon was clearly aware that Larry had been diagnosed with Stage Four cancer and that this would further decrease his life expectancy. Larry did not conceal these facts from Maxon, as they were specifically set out in the settlement agreement that Maxon drafted and filed with the Commission. Maxon makes no argument that Nance fraudulently withheld his medical condition. The fact that, in hindsight, Maxon believes it reached a "bad deal" is not grounds for the Commission to reject the settlement agreement. Thus, pursuant to the restricted discretion under the amended section 287.390.1 and based on the factual stipulations and settlement agreement in this case, the Commission was without discretion to reject the parties' settlement agreement.[17]

■ This Court must affirm the Commission's decision unless it is not authorized by law. This Court is not bound by the Commission's interpretation or application of the law; therefore, no deference is

---

17. Moreover, the Missouri Code of State Regulations, which the Commission has adopted, further confirms the Commission's obligations to approve an uncontested, joint settlement at 8 CSR 50.2.010(18)(C): "A compromise settlement will be approved pursuant to sections 287.390 and 287.616 RSMo, un-

less in the opinion of the administrative law judge or legal advisor, the settlement is not in accordance with the rights of the parties." Again, there is no evidence, allegation or argument in this case that the settlement violated the rights of any party.

afforded the Commission's interpretation of a statute. *White*, 375 S.W.3d at 910 (citations omitted). When the Commission found that it had no authority to grant the commutation because the underlying action had proceeded to a final award, it erred as a matter of law. When the Commission found that it was without authority to approve a settlement agreement to commute the award for more than the present value of future PTD payments, the Commission erred as a matter of law. "The law places a duty upon the Commission to either approve or disapprove any settlement attempted to be made. This duty cannot be avoided." *Roth v. J.J. Brouk & Co. Corp.*, 356 S.W.3d 786, 789 (Mo.App. E.D.2011) (internal citations and quotation marks omitted).

Point Two is granted.

Based on our holding under Points One and Two, we do not need to reach Nance's Point Three.

Finally, based on Nance's success on appeal in this matter, Maxon's request for sanctions for frivolous appeal pursuant to Rule 84.19 is denied.

The decision of the Commission is reversed and the cause remanded to the Commission for its approval of the settlement agreement in this cause.[18]

All concur.

---

18. Maxon argued at oral argument that Sherry lacked standing to proceed with this action. Sherry, after receipt of the Commission's February 2, 2012 order, filed a "Substitution of Spouse for Deceased Employee pursuant to section 287.580." Maxon failed to properly raise this issue in a point relied on and the issue is therefore waived. Rule 84.04(e); *Ashworth v. City of Moberly*, 53 S.W.3d 564, 578 n. 5 (Mo.App. W.D.2001).