**STATE of Missouri, Respondent,**

**v.**

**James Calvin SMITH, Appellant.**

**No. SC 95461**

Supreme Court of Missouri,
en banc.

Opinion issued July 11, 2017

Smith was represented by Amy M. Bartholow of the public defender's office in Columbia, (573) 777-9977.

The state was represented by Shaun J. Mackelprang of the attorney general's office in Jefferson City, (573) 751-3321.

Mary R. Russell, Judge

James Smith was arrested after a string of break-ins at businesses in Sedalia. Smith was charged with one count of first-degree burglary, four counts of second-degree burglary, four counts of felony stealing, as well as one count of property destruction and resisting arrest. For the first-degree burglary charge, the jury was instructed on the charged offense and the lesser included offense of second-degree burglary. The trial court refused Smith's request for an additional instruction on first-degree trespass. Smith also requested the trespass instruction for each of the second-degree burglary charges, but the trial court refused to give the instruction for three of the four charges. The jury found Smith guilty of all charged offenses.

On appeal, Smith argues his convictions for first- and second-degree burglary on counts for which no trespass instruction was given must be reversed and remanded for a new trial. Additionally, he claims the case must be remanded for resentencing of his felony stealing convictions in the wake of *State v. Bazell*, 497 S.W.3d 263 (Mo. banc 2016).[1] Finally, he contends the trial

---

1. In his original briefs to this Court, Smith sought reversal of three of his four felony

stealing convictions based on the trial court's failure to give requested lesser included of-

court lacked subject matter jurisdiction to convict him of one second-degree burglary count for allegedly burglarizing the United States Post Office in Sedalia.

The trial court erred when it refused to give an instruction for first-degree trespass for the charged burglary offenses. As a result, Smith's convictions for those counts are reversed, and the case is remanded for a new trial on those charges.

Additionally, because the enhancement provisions of section 570.030.3 [2] do not apply to the definition of stealing in section 570.030.1, as this Court held in *Bazell*, Smith's felony stealing convictions must be reversed and remanded for resentencing as misdemeanors. In all other respects, the trial court's judgment is affirmed.

## Factual Background

Smith broke into a number of buildings in Sedalia in 2012 and 2013. In April 2012, Smith cut open a fence surrounding a landscaping business and a large camper parked on the property. Smith's DNA was found on a cigarette butt recovered near the hole in the fence. He took a computer, a tablet, and a number of trimmers and leaf blowers from the business. Smith also broke into the camper by breaking the glass in the front door. He stole a television and a handgun from the camper.

In August 2012, Smith broke into the United States Post Office in Sedalia. An employee of the post office testified a window had been broken with a brick and items in the office had been disturbed and moved around. Police found a small amount of blood by the broken window and a larger blood smear elsewhere in the building. The DNA profile of the blood matched Smith's DNA.

The following month, Smith broke into Sedalia Tool and Manufacturing using a piece of steel to break a window. He vandalized a vending machine by trying to pry it open and damaged a number of interior doors and other items in the business. Smith stole a laptop computer containing a "SURFCAM access key," which had a value of approximately $14,000. His blood was found after the break-in on a piece of paper located in the building's office. When asked by police about the break-in at Sedalia Tool and Manufacturing, Smith stated he did not know where the business was located and had never been there.

In December 2012, Smith broke into a repair shop in Sedalia. He stole money, whiskey, and the key to the front door. After the break-in, the shop's owner changed the locks on the doors and installed a security camera. Several months later, Smith broke into the shop again. The key previously stolen from the shop was found bent in the new lock. When the key did not work and he could not kick in the door, Smith gained access to the building by breaking a window. He took a computer, software, a motorcycle welder, a stereo receiver, and a bottle of vodka. The aggregated value of the items stolen from the shop was estimated at $1,274.71. Shoe prints found around the shop matched the tread on a pair of Smith's shoes, which were discovered during a search of his residence.

Smith was charged as a prior and persistent offender with one count of burglary in the first degree, four counts of burglary in the second degree, four counts of felony stealing, one count of property damage in the first degree, and one count of resisting

fense instructions for those charges. After *Bazell* was decided, Smith filed a motion to remand the case in accordance with the holding in *Bazell*.

2. All statutory references are to RSMo Supp. 2013 unless otherwise specified.

arrest. Smith requested the jury be instructed on the lesser included offense of trespass in the first degree for each of the burglary counts. Similarly, he requested lesser included offense instructions for misdemeanor stealing on Counts 4 and 7, which were charged as felony stealing for the appropriation of property valued at more than $500. The trial court refused all requested instructions for lesser included offenses,[3] and the jury found Smith guilty of all offenses as charged.

The trial court sentenced Smith as a prior and persistent offender to 10 years' imprisonment for the first-degree burglary charge (Count 1), seven years' imprisonment each for the second-degree burglary and felony stealing charges (Counts 2, 3, 4, 5, 6, 7, 9, and 10), four years' imprisonment for resisting arrest (Count 11), and 30 days in jail for destruction of property (Count 8). The sentences for counts 2 through 11 were set to run concurrently with each other but consecutively to the sentence for Count 1. Smith appeals.[4]

## Discussion

### I. The trial court's failure to give a lesser included offense instruction for Counts 1, 3, 6, and 9 was error

#### A. Count 1

On Count 1, the jury convicted Smith of first-degree burglary, the charged offense, after also being instructed on second-degree burglary. Smith's counsel timely requested an instruction for first-degree trespass, which the trial court refused to give. Smith contends the failure to give the requested trespass instruction was reversible error because trespass is a nested lesser included offense of the charged offense.

Whether to give a requested jury instruction pursuant to section 556.046 is a question of law this Court reviews *de novo*. *State v. Jackson*, 433 S.W.3d 390, 395 (Mo. banc 2014). Section 556.046.1(1) defines a lesser included offense as one "established by proof of the same or less than all the facts required to establish the commission of the offense charged." Missouri law requires instruction on a lesser included offense when (1) "a party timely requests the instruction;" (2) "there is a basis in the evidence for acquitting the defendant of the charged offense; and" (3) "there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested." *Jackson*, 433 S.W.3d at 396; *see also* sec. 556.046.2.

Smith's counsel timely requested the trespass instruction, and the parties agree trespass in the first degree is a "nested" lesser included offense of first- and second-degree burglary because it is composed of a subset of the elements of those offenses.[5] *See Jackson*, 433 S.W.3d at 404. Because it is impossible to commit first-degree burglary without also necessarily committing first-degree trespass, there was a basis in the evidence to convict Smith of first-degree trespass. *See id.* Fi-

---

**3.** The trial court gave the requested trespass instruction only for Count 5, which related to the break-in of the post office.

**4.** This Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.

**5.** A person commits first-degree burglary by knowingly entering a building or inhabitable structure unlawfully to commit a crime there-in while armed with a deadly weapon. *See* sec. 569.160. Second-degree burglary is a subset of the elements of first-degree burglary, requiring only a knowing unlawful entry with the intent to commit a crime therein. *See* sec. 569.170. Commission of first-degree trespass requires only the first element of both first- and second-degree burglary. *See* sec. 569.140.

nally, this Court has held there is always a basis in the evidence to acquit the defendant of the charged offense because the jury is free to disbelieve any or all of the evidence presented. *Id.* at 399; *see also State v. Randle*, 465 S.W.3d 477, 479 (Mo. banc 2015); *State v. Roberts*, 465 S.W.3d 899, 901 (Mo. banc 2015); *State v. Pierce*, 433 S.W.3d 424, 430 (Mo. banc 2014). Consequently, the trial court was required to give the requested first-degree trespass instruction and erred in failing to do so.

 "Prejudice is presumed when a trial court erroneously refuses to give a properly requested instruction on a nested lesser included offense." *State v. Jensen*, No. SC95280, 524 S.W.3d 33, 2017 WL 2952320 (Mo. banc 2017) (handed down contemporaneously with this opinion); *Jackson*, 433 S.W.3d at 395 n.4. Nonetheless, the State argues the Court should not reverse Smith's conviction for Count 1 based on the trial court's failure to give the requested trespass instruction because the jury was instructed on one lesser included offense, burglary in the second degree, and found Smith guilty of first-degree burglary.[6] The State relies on *State v. Johnson*, 284 S.W.3d 561 (Mo. banc 2009), a pre-*Jackson* case, to support its argu-

ment that the failure to give a requested lesser included offense instruction is not prejudicial, reversible error under the present circumstances. Specifically, the State points to *Johnson*'s holding that "[t]he failure to give a different lesser included offense instruction is neither erroneous nor prejudicial when instructions for the greater offense and *one* lesser included offense are given and the defendant is found guilty of the greater offense." *Id.* (emphasis in original).

In *Johnson*, the defendant was charged with first-degree murder for shooting a police officer at close range, walking away to converse with someone, and then returning to resume the fatal shooting. *Id.* at 567-68. The jury was instructed on first- and second-degree murder. *Id.* at 575-76. Defense counsel also requested instructions for second-degree murder without sudden passion and voluntary manslaughter, but the trial court refused to give those instructions. *Id.* at 575. The jury returned a verdict finding the defendant guilty of first-degree murder, and the trial court sentenced the defendant to death. *Id.* at 567. This Court affirmed his convictions, finding no error in the failure to give the requested instructions. *Id.* at 575.[7]

6. This Court addressed a similar question in *Randle*, in which the defendant was charged with first-degree assault. 465 S.W.3d at 478. The trial court instructed the jury on first- and second-degree assault but refused the defendant's request for an additional instruction on the lesser included offense of third degree assault. *Id.* at 478-79. The jury found the defendant guilty of second-degree assault. *Id.* at 479. This Court concluded that the trial court's failure to instruct on third degree assault was reversible error. *Id.* at 480. *Randle* establishes that the failure to give an additional lesser included offense instruction when the jury is already instructed on one lesser included offense constitutes error. *Id. Randle* does not address the prejudice issue presented here, however, because the jury found the defendant guilty of the lesser included offense on which it was instructed (second-degree assault), rather than the charged offense (first-degree assault). In this case, the jury found Smith guilty of the greater offense (first-degree burglary) rather than the lesser included offense for which an instruction was given (second-degree burglary).

7. Moreover, as noted in *Jensen*, handed down contemporaneously with this opinion, *Johnson*'s prejudice analysis is implicitly consistent with the conclusion that Smith was prejudiced by the trial court's failure to give the requested instruction for first-degree trespass. 524 S.W.3d at 38-40. *Jensen* discusses at length *Johnson* and its reliance on *State v. Glass*, 136 S.W.3d 496, 515 (Mo. banc 2004), which expressly applied the "testing the elements" approach this Court now applies in

*Johnson* is not dispositive here. Unlike this case, *Johnson* does not fall under the umbrella of *Jackson*'s lesser included offense instruction analysis. The instructions requested by the defendant in *Johnson* were for voluntary manslaughter, which is *not* a nested lesser included offense of first-degree murder because it requires proof of "sudden passion," an additional element not belonging to the greater offense. *See Jackson*, 433 S.W.3d at 404 (defining a nested lesser included offense as composed of a subset of the elements of the greater offense); *see also* MAI 314.08 Notes on Use 3 (noting the instruction for voluntary manslaughter should be given only after evidence of sudden passion arising from adequate cause has been introduced).

As noted above, Smith requested an instruction for first-degree trespass, which is a nested lesser included offense of both first- and second-degree burglary. This case falls squarely within *Jackson*'s analysis, and *Jackson* clearly stands for the principle that the jury's decision to convict of the charged crime rather than acquit a defendant does not insulate the trial court's instructional decisions from reversal on appeal. *Jackson*, 433 S.W.3d at 392. The State's broad argument that Smith's conviction should not be reversed because the jury was given one nested lesser included offense instruction is inconsistent with *Jackson*.

■ Under *Jackson*'s logic, the jury's apparent rejection of one lesser included offense in favor of the charged offense does not automatically mean the refusal to give additional nested lesser included offense instructions can be ignored as harmless error on appeal. This case illustrates why. Smith was charged with first-degree burglary, which has three elements: (1) a knowing unlawful entry into a building or inhabitable structure; (2) with an intent to commit a crime therein; (3) while armed with a deadly weapon. Second-degree burglary contains only the first two elements of the greater offense. Consequently, instructing the jury on first- and second-degree burglary asks the jury to consider their belief in the presence of the third element: whether Smith was armed with a deadly weapon.

But that is not the element Smith disputed at trial or on appeal. Instead, he contested the *second* element of the charged offense, requiring the jury to find he had the intent to commit a crime when he entered the property. Both of the instructions given to the jury contain the same intent element. By contrast, first-degree trespass does not have the intent element and requires only a finding of a knowing unlawful entry. The trespass instruction requested by Smith would have drawn the jury's attention to the question of his intent—the element of the charged

*Jensen* and in this case. *Id.* at 38–39. As *Jensen* explains, *Johnson* and *Glass* reached the conclusion that the defendants were not prejudiced by the failure of the trial courts to give requested lesser included offense instructions for first-degree murder when the instruction for second-degree murder was given and the defendants were convicted of first-degree murder because the "jury ha[d] already been given an opportunity to reject the element of deliberation and did not do so." *Id.* (quoting *Glass*, 136 S.W.3d at 515). In contrast, no

instruction given by the trial court tested the element of the charged offense that was disputed by Smith in this case, and, "[t]herefore, the state has not rebutted the presumption of prejudice resulting from the trial court's erroneous refusal to instruct the jury on the nested lesser included offense of involuntary manslaughter." *Id.* at 40. To be sure, *Jackson* does not discuss the various ways the State may overcome the presumption of prejudice. The testing of the elements may not be the sole way to do so. The presumption of prejudice was not rebutted in this case.

offense Smith contested—in a way neither of the two given instructions did.

The court of appeals encountered a similar situation in *State v. Frost*, 49 S.W.3d 212, 215-16. (Mo. App. 2001), in which the defendant was charged with second-degree murder for causing the death of a man by stabbing him. The jury was instructed on second-degree murder, voluntary manslaughter, and self-defense. *Id.* at 216. The defendant also requested an instruction for involuntary manslaughter, a nested lesser included offense of second-degree murder requiring a finding the defendant recklessly, rather than knowingly, caused the victim's death. *Id.* She argued the evidence at trial also supported a finding she recklessly stabbed the victim under the unreasonable belief that doing so was necessary to prevent him from raping her. *Id.* The jury convicted her of second-degree murder. *Id.*

The court of appeals reversed because the trial court failed to give the requested involuntary manslaughter instruction. *Id.* at 221. In reaching its holding, the court of appeals considered whether "the instructions sufficiently tested the elements of the greater offense." *Id.* at 219. The instructions given to the jury for second-degree murder and voluntary manslaughter "present[ed] the jury with the opportunity to determine whether" the defendant acted "under the influence of sudden passion arising from adequate cause," which is "the only difference between the two instructions." *Id.* at 219-20. The additional instruction for self-defense allowed the jury to consider the theory that the defendant acted under the reasonable belief her use of deadly force was necessary to defend herself. *Id.* at 220. The court noted that, while the jury had the opportunity to consider and expressly rejected both a "sudden passion" theory and a lawful self-defense claim, none of the instructions asked the jury to consider whether the defendant recklessly stabbed the victim "with an *unreasonable belief* that the conduct was necessary to save her own life." *Id.* (internal quotations and alterations omitted) (emphasis added). Because the requested instruction for involuntary manslaughter would have given the jury the opportunity to answer that question, the court of appeals concluded it could not say "the jury was adequately tested on the elements of second-degree murder to the extent that submission of involuntary manslaughter would have made no difference." *Id.* at 221.

In this case, the instruction for first-degree trespass would have tested the jury's belief that Smith intended to commit a crime when he unlawfully entered the property. The instructions for first- and second-degree burglary failed to give the jury the opportunity to find Smith knowingly and unlawfully entered the property, but did so *without the intent to commit a crime therein.* The trial court erred in failing to give the requested trespass instruction, and Smith was prejudiced as a result.

### B. Counts 3, 6, and 9

Smith argues his convictions for second-degree burglary on Counts 3, 6, and 9 must be reversed because the trial court erroneously refused to give a timely requested instruction for first-degree trespass for each of the charged offenses. No lesser included offense instructions were given for any of these offenses.

The State once again agrees the trial court erred in refusing to give the requested instruction because first-degree trespass is a nested lesser included offense of second-degree burglary. For each of these charges, however, the State argues Smith's convictions should not be reversed because the strong evidence presented at trial of Smith's intent to commit stealing when he

unlawfully entered the various properties rebutted the presumption of prejudice.

With regard to these counts, this case is indistinguishable from *Jackson* and *Pierce*, in which the jury was instructed on only the charged offense and this Court concluded that the failure to instruct on a timely requested, lesser included offense was reversible error. *Jackson*, 433 S.W.3d at 392; *Pierce*, 433 S.W.3d at 427. The State's fact-based argument ignores "the jury's right to disbelieve all or any part of the evidence and its right to refuse to draw needed inferences," which is "a sufficient basis in the evidence—by itself—for a jury to conclude that the state has failed to prove the differential element." *Jackson*, 433 S.W.3d at 399. "No matter how [compelling] the evidence ... in support of the differential element may seem to judges and lawyers, no evidence *ever* proves an element of a criminal case until all 12 jurors believe it." *Id.* at 399-400 (emphasis in original). In keeping with *Jackson* and *Pierce*, Smith's convictions on Counts 3, 6, and 9 are reversed and remanded for a new trial.

## II.  Section 570.030.3 does not apply to Smith's stealing charges

■ Smith seeks remand of his four felony stealing convictions, claiming that *Bazell*, 497 S.W.3d 263, requires resentencing of those convictions as misdemeanors. He was charged with four counts of felony stealing. One was for stealing a firearm, which was enhanced to a felony stealing charge under section 570.030.3(3)(d). His three additional felony stealing counts were for the theft of property worth more than $500 pursuant to section 570.030.3(1). Smith argues his convictions for all four felony stealing counts must be reversed and remanded for resentencing as misdemeanors because the value of property or services is not an element of the crime of stealing as defined in section 570.030.1 and, consequently, none of the sentence-enhancing provisions of section 570.030.3 apply to his stealing offenses. Pursuant to *Bazell*, Smith is correct.

*Bazell* held that the provisions of section 570.030.3, RSMo Supp. 2009, could not be used to enhance a defendant's offenses for stealing firearms to felony stealing because the subsection applies only to offenses "in which the value of property or services is an element." [8] *Id.* at 266-67. Section 570.030.1 defines the crime of stealing as "appropriat[ing] property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." Based on that language, *Bazell* held "[t]he value of the property or services appropriated is not an element of the offense of stealing [ ]" and, as a result, the defendant's offenses could not be charged as felony stealing under the enhancement provisions of section 570.030.3. 497 S.W.3d at 266-67.[9]

8.  The 2013 version of section 570.030, which applies to Smith's offenses, includes the same language limiting the application of section 570.030.3's enhancement provisions to only offenses "in which the value of property or services is an element." Consequently, the *Bazell* analysis controls in this case. As of January 1, 2017, a new version of section 570.030 took effect, which does not include the key language on which the *Bazell* decision was premised.

9.  The Court also noted the defendant had been convicted of a third felony stealing count for the theft of property worth more than $500. *Id.* at 267 n.4. Because the defendant did not challenge her conviction on that count at the court of appeals, the Court declined to address her supplemental arguments on that count. *Id.*

Both of the provisions used to enhance Smith's stealing charges to felonies are included in subsection 3 of section 570.030, which applies only to an offense "in which the value of property or services is an element." *Id.* at 266. The State agrees Count 2, which was charged as a felony under section 570.030.3(3)(d) for the theft of a firearm, was improperly enhanced according to the reasoning in *Bazell*. The State and Judge Stith's opinion dissenting in part argue, however, that Counts 4, 7, and 10 were not affected by *Bazell* because they were enhanced to felonies pursuant to section 570.030.3(1), not section 570.030.3(3). Section 570.030.3(1) provides for enhancement of an offense to a felony if the value of the property or services appropriated is more than $500. The State contrasts the two provisions, noting section 570.030.3(3) provides for enhancement of stealing certain categories of items regardless of value, whereas section 570.030.3(1) enhances an offense based on the value of the property appropriated. As a result, the State and Judge Stith's opinion contend the value of property or services *was* an element of Counts 4, 7, and 10 because section 570.030.3(1) provides the "value" element missing from the basic definition of stealing in section 570.030.1.

This argument misconstrues the holding of *Bazell* and the structure of section 570.030. *Bazell's* analysis regarding the applicability of section 570.030.3 to the offense of stealing does not depend on which particular enhancement provision is at issue. 497 S.W.3d at 266-67. Instead, *Bazell* looked at the definition of the offense of stealing in section 570.030.1 and held that, because the definition does not contain as an element "the value of property or services," "section 570.030.3 does not apply here." *Id.* at 267. *Bazell* draws no distinction among the numerous subcategories enumerated within section 570.030.3.

Furthermore, the structure of the statute compels this conclusion because, unless the offense contains the value of property or services as an element, section 570.030.3, in its entirety, cannot be used to enhance the offense to a felony. To argue one of the subcategories for enhancement under section 570.030.3 can be used to supply the value element for an offense otherwise lacking that element is flawed and circular reasoning. Appropriation of property or services worth more than $500 may be charged as a felony under section 570.030.3(1) *only* if the underlying offense contains as an element "the value of property or services."

Judge Stith's opinion understates the importance of this operative language in the introductory clause of section 570.030.3. This language conditions the application of *all* the subdivisions enumerated below it—including section 570.030.3(1)—on the presence of a value element in the offense for which enhancement is sought. In other words, enhancement pursuant to one of those subdivisions is available "*if*" "the value of property or services" is an element. Sec. 570.030.3 (emphasis added). According to this plain and unambiguous statutory language, an offense must contain the "value" element *before* considering whether additional facts justifying enhancement under one of the subdivisions of subsection .3 is available. As this Court concluded in *Bazell*, because of this language, "section 570.030.3 does not apply here." 497 S.W.3d 263, 267.

While Judge Stith's opinion faults this conclusion for failing to give meaning to the subdivisions of subsection .3, this Court cannot ignore or avoid the plain language of the statute. As *Bazell* recognized, "We cannot know why the legislature, in 2002, decided to amend section 570.030.3 to add the requirement that only offenses for which 'the value of property or

services is an element' may be enhanced to a felony" pursuant to section 570.030.3, "but this is what the legislature clearly and unambiguously did." *Id.* at 266-67.[10] Since *Bazell* was decided, the court of appeals has correctly and consistently held section 570.030.3 is inapplicable to the offense of stealing, regardless of the particular provision of section 570.030.3 under which enhancement is sought. *State v. McMillian*, No. WD79440, 524 S.W.3d 51, 53, 2016 WL 6081923, at *2 (Mo. App. Oct. 18, 2016) (application for transfer filed December 7, 2016) (holding a charge for stealing property valued at more than $500 could not be enhanced to a felony under section 570.030.3(1) because "*Bazell* made no distinction between the various ways the enhancement provision could be triggered"); *State v. Filbeck*, 502 S.W.3d 764, 765 (Mo. App. 2016) (reversing and remanding a defendant's felony stealing convictions for the theft of cattle under section 570.030.3(3)(j) for resentencing as misdemeanors); *State v. Turrentine*, No. SD34257, 524 S.W.3d 55, 57–58, 2016 WL 6818938, at *2 (Mo. App. Nov. 18, 2016) (application for transfer filed December 22, 2016) (holding a sentence for a defendant charged with stealing property worth more than $500 could not be enhanced to a felony); *State v. Metternich*, No. WD79253, 2016 WL 7439121, at *2 (Mo. App. Dec. 27, 2016) (transferred by order of the Supreme Court of Missouri on April 7, 2017)

(section 570.030.3(1) did not apply to enhance a defendant's charge for stealing property worth more than $500); *State v. Bowen*, No. ED103919, 524 S.W.3d 55, 57–58, 2017 WL 361185, at *2 (Mo. App. Jan. 24, 2017) (application for transfer filed March 10, 2017) (holding "the *Bazell* decision bars all § 570.030.3 enhancements from being applied to a stealing offense charged under § 570.030"). *But see State v. Shockley*, 512 S.W.3d 90, 93 (Mo. App. 2017) (indicating that, had the defendant been charged with felony stealing under section 570.030.3(1), which "expressly includes value as an element of the crime for stealing property or services valued at $500 or more," his conviction for felony stealing could have been affirmed after *Bazell*). Smith's four stealing convictions are reversed and remanded for resentencing as misdemeanors.

### III. The trial court did not plainly err in entering judgment as to Count 5 relating to the burglary of the United States Post Office in Sedalia

▇▇▇ Because the post office is property of the federal government, Smith argues federal courts have exclusive jurisdiction over any alleged crime committed therein.

▇▇▇▇ Smith did not raise this claim at trial or in briefs to the court of appeals and seeks plain error review. Unpreserved

10. Judge Stith's opinion also misinterprets the holding in this case. Her opinion implies the Court's decision may contradict United States Supreme Court cases holding that a finding of fact used to enhance punishment must be treated as an element of the offense, which the state has the burden of proving to the jury beyond a reasonable doubt. *See, e.g.*, *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This is not the case. The Court's opinion does not speak to the issues considered in *Apprendi*. Instead, the Court reviewed the structure of section 570.030.3 in *Bazell*, and concluded

that the subdivisions of subsection .3 cannot be used to supply elements missing from an offense for which enhancement is sought. This conclusion is not a result of characterizing the facts included in the subdivisions as "sentence-enhancers" instead of "elements" that must be proven beyond a reasonable doubt, as Judge Stith's opinion suggests. Rather, the Court's conclusion is driven by the plain language in section 570.030.3, which provides the enumerated subdivisions cannot be applied unless the offense contains "the value of property or services" as an element.

claims may be reviewed in the Court's discretion for plain error. Rule 30.20. "Such errors must be evident, obvious, and clear." *State v. Taylor*, 466 S.W.3d 521, 533 (Mo. banc 2015) (internal quotations omitted). Plain error occurs when an alleged error provides "substantial grounds for believing a manifest injustice or miscarriage of justice occurred." *Id.* (internal quotations omitted).

While Missouri courts generally have subject matter jurisdiction over criminal cases under article V, section 14 of the Missouri Constitution, *see J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009), no state may give its courts subject matter jurisdiction over "matters that federal law places under the 'exclusive' jurisdiction of the federal courts." *State ex rel. Laughlin v. Bowersox*, 318 S.W.3d 695, 698 (Mo. banc 2010).

By statute, Missouri has given its consent for the federal government to purchase land in the state for the purpose of establishing and maintaining post offices. *See* sec. 12.010, RSMo 2000. Missouri also ceded jurisdiction over such lands to the federal government. *See Laughlin*, 318 S.W.3d at 699; *see also* sec. 12.020, RSMo 2000. But the federal government does not accept exclusive jurisdiction simply by purchasing land. "For lands purchased prior to February 1, 1940, the United States is presumed to have accepted jurisdiction." *Laughlin*, 318 S.W.3d at 698 n.2. For lands purchased after that date, there is a "presumption against acceptance of jurisdiction by the United States." [11] *Id.*

Smith relies on *Laughlin*, in which this Court issued a writ of habeas corpus and vacated a petitioner's convictions after finding his crimes were committed in the United States Post Office in Neosho, over which the federal government had presumptively accepted exclusive jurisdiction. *Id.* at 698-99, 703. The petitioner established "[t]he United States purchased the Neosho post office in 1933 and continuously has owned it since then." *Id.* at 698. Because the United States acquired the Neosho post office property prior to 1940, there was a presumption that the federal government accepted exclusive jurisdiction of crimes committed therein. *Id.* at 698 n.2.

*Laughlin* is factually distinguishable from this case because Smith has not shown the United States accepted exclusive jurisdiction over the United States Post Office in Sedalia. Unlike *Laughlin*, it is not clear from this record when the United States purchased the Sedalia post office. Further, it appears the federal government did not acquire the property until 1968,[12] resulting in a presumption *against* acceptance of exclusive jurisdiction on the part of the United States. Smith has not rebutted the presumption by presenting evidence the federal government filed an acceptance of jurisdiction pursuant to 40 U.S.C. § 3112(b).

Because Smith has not presented facts suggesting the United States has accepted exclusive jurisdiction of the federal property in question, he has not carried his bur-

11. 40 U.S.C. § 3112(c) provides: "It is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over land as provided in this section." Such acceptance is made by "filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated." 40 U.S.C. § 3112(b).

12. As the State points out, the current location of the Sedalia post office is 405 East 5th Street, which was occupied by the United States Postal Service in 1968 according to an online "USPS Owned Facilities Report," available at: https://about.usps.com/who-we-are/foia/readroom/ownedfacilitiesreport.htm.

den of proving the trial court lacked subject matter jurisdiction over Count 5. His conviction for burglary in the second degree for Count 5 is affirmed. Smith has presented no substantial grounds here to believe a manifest injustice or miscarriage of justice occurred.

## Conclusion

Smith's convictions for first- and second-degree burglary (Counts 1, 3, 6, and 9), except for the conviction relating to the break-in at the Sedalia post office, are reversed, and the case is remanded for a new trial as to those charges. Smith's stealing convictions (Counts 2, 4, 7, and 10) are reversed and remanded for resentencing as misdemeanors. In all other respects, the trial court's judgment is affirmed.

Wilson, J., concurs; Fischer, C.J., concurs in Parts I.B, II, and III and dissents from Part I.A in separate opinion filed; Powell, J., concurs in opinion of Fischer, C.J.; Stith, J., concurs in Parts I and III and dissents from Part II in separate opinion filed; Breckenridge and Draper, JJ., concur in opinion of Stith, J.

Zel M. Fischer, Chief Justice, concurring and dissenting.

I concur in Sections I.B., II and III of the majority opinion. However, I dissent from Section I.A. of the majority opinion because, in my view, the State overcame the presumption of prejudice from failure to give the nested lesser-included offense instruction of first-degree trespass.[1]

As the majority opinion points out, the "testing of an element" is one way the State could overcome the presumption of prejudice, but it is not the only way.[2] After review of the record in this case, and based on the jury instructions given[3] and the strength of the evidence, it is my view the State overcame the presumption of prejudice as it relates to Count 1. Accordingly, I would affirm Smith's first-degree burglary conviction (Count 1).

Laura Denvir Stith, Judge, concurring and dissenting.

While I concur with the holdings in Sections I and III in the majority opinion, I dissent from the holding in Section II that this Court's decision in *State v. Bazell, 497 S.W.3d 263 (Mo. banc 2016)*, applies to charges of felony stealing of $500 or more but less than $25,000 under section 570.030.3(1).[1]

---

1. Consistent with today's decision in *State v. Jensen*, No. SC95280, 524 S.W.3d 33, 2017 WL 2952320 (Mo. banc 2017), this Court performs a two-step analysis of whether a circuit court's erroneous refusal to give a requested nested lesser-included offense resulted in reversible instructional error. The first step is to determine whether the circuit court erred by failing to instruct the jury on the properly requested nested lesser-included offense as required by § 556.046. *Jensen*, 524 S.W.3d at 36–38. If so, the second step is to determine whether such error was prejudicial. *Id.* at 38. "This Court will reverse on a claim of instructional error only if there is an error in submitting an instruction and that error results in prejudice to the defendant." *State v. Deck*, 303 S.W.3d 527, 548 (Mo. banc 2010). "[P]reju-

dice is presumed when a trial court fails to give a requested lesser included offense instruction that is supported by the evidence." *State v. Jackson*, 433 S.W.3d 390, 395 n.4 (Mo. banc 2014). The State may rebut the presumption of prejudice. *See Jensen*, 524 S.W.3d at 38, n.3, & n.5.

2. Smith was charged with first-degree burglary. The jury was instructed on second-degree burglary. The circuit court refused Smith's request for the nested lesser-included offense instruction of first-degree trespass on this count. The jury convicted Smith of first-degree burglary.

3. "[A] jury is presumed to follow the jury instructions." *State v. Whitfield*, 107 S.W.3d 253, 263 (Mo. banc 2003).

The majority's holding is based on the premise that the elements of the offense of stealing $500 or more are set out solely in section 570.030.1, which states in relevant part, "A person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof." The majority says it can consider only this definition section and can ignore section 570.030.3(1), which provides that if the property appropriated has a value of $500 or more but less than $25,000, it is a class C felony.

The majority's premise that there is only one crime of stealing fully set out in the definition of stealing and other provisions of the statute cannot be considered ignores well-settled principles. A court cannot take a single statutory word or phrase and determine its meaning without consideration of the rest of the statute. To the contrary, "[t]he primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *State ex rel. Evans v. Brown Builders Elec. Co.*, 254 S.W.3d 31, 35 (Mo. banc 2008) (internal quotations and citations omitted).

*Bazell* correctly noted, in determining legislative intent, if the meaning of the statutory language is plain and clear, "the Court should not employ canons of construction to achieve a desired result." *497 S.W.3d at 266*. But the majority is incorrect in suggesting this means a statutory provision—such as the definition of stealing on which the majority relies—must be interpreted in isolation from the remainder of the statute. To the contrary, "[t]he provisions of a legislative act are not read in

isolation but construed together, and if reasonably possible, the provisions will be harmonized with each other." *Bachtel v. Miller Cnty. Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. banc 2003). "In determining the intent and meaning of statutory language, 'the words must be considered in context and sections of the statutes in pari materia, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words.'" *Evans*, 254 S.W.3d at 35, quoting, *State ex rel. Wright v. Carter*, 319 S.W.2d 596, 600 (Mo. banc 1959); see also *State v. McLaughlin*, 265 S.W.3d 257, 267 (Mo. banc 2008).

Consideration of the statute as a whole is required in determining whether the meaning of a word or provision is clear, and not just after a court has determined the language is ambiguous. For instance, this Court held in *J.B. Vending Co., Inc. v. Director of Revenue*, 54 S.W.3d 183, 187-88 (Mo. banc 2001), in determining whether the word "public" as used in a taxing statute was ambiguous, it was important to recognize:

> The issue is not whether a particular word in a statute, considered in isolation, is ambiguous, but whether the statute itself is ambiguous. This follows from the fact that the goal in interpreting a statute is to determine the legislative intent, *and to do that one must consider the meaning of a particular word in the context of the entire statute in which it appears.* ... Here, when the statute as a whole is considered, the intent of the legislature and the language of the statute are both intrinsically clear.

1. As in the majority opinion, all statutory references are to RSMo Supp. 2013, unless otherwise specified.

(Emphasis added and citations omitted). Similarly, in deciding the meaning of a phrase in the Workers' Compensation Act, section 287.215, the court of appeals held:

> To discern the statute's purpose, its context with the over-all scheme established by the legislature for adjudicating workers' compensation claims is considered.

*Parsons v. Steelman Transp., 335 S.W.3d 6, 13-14 (Mo. App. 2011)*, quoting, *Fisher v. Waste Mgmt. of Mo., 58 S.W.3d 523, 526 (Mo. banc 2001)*. To the same effect is *Bolen v. Orchard Farm R-V School District, 291 S.W.3d 747, 751 (Mo. App. 2009)*, which states that while "this court will give effect to the language as written, and will not engage in statutory construction," it is also necessary that the court:

> presume that the legislature intended that each word, clause, sentence, and provision of a statute have effect and should be given meaning. [*State ex rel. Vincent v. D.C., Inc., 265 S.W.3d 303, 306 (Mo. App. 2008)*.] In determining the intent and meaning of statutory language, the words must be considered in context and sections of the statutes in pari materia, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words. *State ex rel. Evans v. Brown Builders Elec. Co., Inc., 254 S.W.3d 31, 35 (Mo. banc 2008)*. We must construe provisions of the entire legislative act together and, to the extent reasonably possible, harmonize all provisions. *Geary v. Missouri State Employees' Retirement System, 878 S.W.2d 918, 922 (Mo. App. W.D. 1994)*. Furthermore, related clauses must be considered when construing a particular portion of a statute. *Id.*

It is well established, therefore, that the meaning of statutory language can only be known by looking at it in context. The majority's interpretation of section 570.030 violates these bedrock principles of statutory construction. The majority makes no attempt to consider the definition of the misdemeanor of stealing in the context of the remainder of the statute setting out the circumstances in which the legislature intended to create a felony crime of stealing.

Indeed, the majority ignores the fact section 570.030.3 explicitly provides that "notwithstanding any other provision of law"—which necessarily includes the definition of stealing—certain types of stealing are class C felonies if they are an "*offense in which the value of property or services is an element.*" (Emphasis added). It also ignores the remaining two-thirds of section 570.030 setting out various additional elements that, if proved, would constitute a different class C felony offense of stealing. The majority would give these provisions no meaning or purpose at all because they would never apply to any offense in that, according to the majority, only the definition of stealing as set out in section 570.030.1 contains the elements of any offense of stealing. This is contrary to the fundamental requirement that, in determining the meaning of statutory language, "This Court must presume every word, sentence or clause in a statute has effect, and the legislature did not insert superfluous language." *Bateman v. Rinehard, 391 S.W.3d 441, 446 (Mo. banc 2013)*. "An entire clause of the statute should not be relegated to the status of excess verbiage." *Schoemehl v. Treasurer of State, 217 S.W.3d 900, 902 (Mo. banc 2007)*; see also *Evans, 254 S.W.3d at 35.*[2]

**2.** The majority does not suggest anything in section 570.030.1 itself provides that it is the sole source for identifying the elements of all crimes of stealing, that other statutory sections cannot be considered, or that the legislature has provided only for misdemeanor steal-

This does not mean *Bazell* was wrongly decided or the statute is well-written to achieve the legislative purpose. As *Bazell* correctly noted, as reorganized by the legislature's 2002 revision of the statute, section 570.030.3 does require the value of the item appropriated be an element. *497 S.W.3d at 266-67. Bazell* also correctly noted neither the definition of stealing set out in section 570.030.1 nor the subdivision listing the crime of stealing a firearm make the value of the item appropriated an element. *Id. Bazell,* therefore, correctly held that stealing a firearm is a misdemeanor, not a class C felony, under section 570.030.3(3)(d) because value is not an element of the crime. *Id. at 267.*

In so holding, *Bazell* used broad language, relied on by the majority, that because the definition of stealing in section 570.030.1 does not make "the value of the property or services" an element, "[t]he value of the property or services appropriated is not an element of the offense of stealing." *Id. at 266.* But that analysis made sense in *Bazell* because it was self-evident section 570.030.3(3)(d), which in full states "any firearms," does not make the value of any services or property an element, so unless value was part of the definition in section 570.030.1, stealing a firearm could not be a felony. Indeed, that is all *Bazell* actually held because that was the only issue before the Court as the defendant failed to preserve his argument that stealing $500 or more was not a class C felony and this Court expressly declined to reach that issue. *Id. at 267 n.4.*

To the extent *Bazell* can be read to foreclose any other subdivision of section 570.030.3 from being considered a class C

felony, even if the subdivision sets out the value of property or services as an element that enhances punishment, it is purely dicta. Such dicta has no binding effect, as this Court reaffirmed just last year:

> Judicial decisions "must be construed with reference to the facts and issues of the particular case, and that the authority of the decision as a precedent is limited to those points of law which are raised by the record, considered by the court, and necessary to a decision." *Parker v. Bruner, 683 S.W.2d 265, 265 (Mo. banc 1985)* (internal quotation omitted).... If the courts' language was intended to address circumstances beyond the facts of those cases, it is dicta. *Id.*

*Byrne & Jones Enters. v. Monroe City R-1 Sch. Dist., 493 S.W.3d 847, 855 (Mo. banc 2016).*

Applying these principles here, it is self-evident from reading the statute the crime of stealing $500 or more up to $25,000 is different from the crime of stealing a firearm and that *Bazell's* holding is not applicable to the facts of this case. Here, the elements of the crime, in addition to appropriating property of another, include that "the value of the property or services appropriated is five hundred dollars or more but less than twenty-five thousand dollars." *§ 570.030.3(1).* Unlike the subdivision challenged in *Bazell,* the plain and ordinary meaning of this language indicates the value of property or services is an element of this crime. The majority says this cannot be the case because section 570.030.3 requires that "an offense must contain the 'value' element *before* considering whether additional facts justifying enhancement under one of the sub-

---

ing. Neither does the majority suggest the legislature actually wanted to make stealing between $500 and $24,999 a misdemeanor rather than a felony, for that argument would be absurd. So the principle that "[s]tatutes

should be construed in such a way as to avoid unreasonable or absurd results" is particularly relevant here. *Nance v. Maxon Elec., Inc., 395 S.W.3d 527, 537 (Mo. App. 2012)* (internal citations omitted).

paragraphs of subsection .3 is available." *Op. at 230.* But there is nothing in the statute about the order in which one must look to provisions of the statute to determine whether value is an element. The statute simply provides that the offense is a class C felony if value is an element. On its face, section 570.030.3(1) makes value an element, and, therefore, the offense under this subdivision is a class C felony.

If this is not enough, further clarity is provided by section 570.030.5, RSMo Supp. 2009, which at the time of the crime provided, "The theft of any item of property or services pursuant to subsection 3 of this section which exceeds five hundred dollars may be considered a separate felony and may be charged in separate counts."[3] Of course, section 570.030.3 could not set out "separate" felonies if it did not make the stealing of property $500 or more a felony in the first instance. Contrary to the majority's opinion, "the structure of section 570.030" supports the conclusion that stealing $500 or more is a felony, not a misdemeanor. Nothing in *Bazell*'s actual holding requires a contrary result, and this Court may affirm the conviction in this and other cases involving stealing $500 or more without disturbing the result in *Bazell* or similar cases in which the charges, unlike charges under section 570.030.3(1), involve firearms or other types of property in which value is not a required finding.

Finally, to the extent the majority's analysis is based on its belief that a fact necessary for sentence enhancement is not an element of an offense, and that all of the elements must be set out in the definition section of the crime alone, it is just incorrect. Even had the legislature not made it clear it intended the provisions of section 570.030.3 to be elements of felony C stealing, this Court would be required to construe them as such under the United

States Supreme Court's decisions in such cases as *Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)*, and *Alleyne v. United States, —— U.S. ——, 133 S.Ct. 2151, 2155, 186 L.Ed.2d 314 (2013)*. In these cases, the Supreme Court rejected the majority's treatment of the factors set out in section 570.030.3 as mere sentence enhancers rather than elements. Instead, whether labeled as a sentence enhancer or element, the Supreme Court instructs courts to look at the provision's purpose and effect. *Apprendi, 530 U.S. at 467, 489-90, 120 S.Ct. 2348.* If the finding of fact is used to enhance punishment, then it is to be treated as an essential element of the offense and must be submitted to the jury and found beyond a reasonable doubt. *Id. Apprendi*'s holding has been extended to facts in aggravation in death penalty cases. *Ring v. Arizona, 536 U.S. 584, 586-87, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).*

More recently, *Alleyne* reaffirmed, "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *133 S.Ct. at 2155.* Accordingly, a defendant has the right to demand the jury find any fact necessary to punishment. *Id.*

Here, the felony enhancement provisions of section 570.030.3 allow for enhanced punishment for certain conduct. *See §§ 558.011.1(3), 558.011.1(5).* Under the majority's approach, even though the value of the item appropriated is required to be considered as an element and found by the jury for Sixth Amendment purposes, that finding does not make the crime into a class C felony because the statute *sub silencio* maintains the distinction between a sentencing enhancer and an element for purposes of the definition of stealing. This

---

**3.** This language was later moved to section 570.030.6, RSMo Supp. 2013.

self-contradictory interpretation of the same statutory requirement is illogical. As Mr. Smith was charged with stealing $500 or more under section 570.030.3(1), he is entitled under the Sixth Amendment to have the question of the value of the stolen property submitted to the jury, for it is a fact used to increase punishment and is therefore an "element." *Alleyne, 133 S.Ct. at 2155.* As such, it should be treated as an element of his crime for other purposes, including for the purpose of deciding whether value is an element of the crime under section 570.030.3.[4]

For these reasons, I dissent from the majority's holding that conviction under section 570.030.3(1) does not constitute a class C felony.

---

4. This distinguishes the "$500 or more" enhancement at issue in this case from the "any firearm" enhancer at issue in *Bazell*, which did not have value as an element.