Alok Ahuja, Judge
Following a jury trial in the Circuit Court of Johnson County, Appellant Ronald Pace was convicted of felony stealing in violation of § 570.030.[2] The court sentenced *648 him to eight years' imprisonment. Pace appeals. He argues that the circuit court erroneously convicted and sentenced him for felony stealing, when his offense must be classified as a misdemeanor in light of the Missouri Supreme Court's decision in State v. Bazell , 497 S.W.3d 263 (Mo. banc 2016). Pace also argues that the circuit court erroneously overruled his motion to suppress evidence derived from the warrantless search of an automobile in which he had a possessory interest. We reject Pace's challenge to the circuit court's suppression ruling. As the State concedes, however, under the Bazell decision Pace should only have been convicted and sentenced for misdemeanor stealing. We reverse Pace's felony stealing conviction and sentence, and remand the case to the circuit court for entry of a conviction for misdemeanor stealing, and resentencing accordingly.
Factual Background
On July 17, 2014, Valerie Downing, the store manager at Glasscock Jewelry in Warrensburg, waited on a man who would later be identified as Christopher Crouch. Crouch acted oddly. He visited the store three times on the same day. During his first visit, Crouch went directly to the back of the store and asked to see the largest diamond ring the store had for sale. After Downing showed him some of the store's larger and more expensive one-carat diamond rings-but not the store's two-carat ring-Crouch said that those rings were not what he wanted, and he left. About fifteen minutes later, Crouch returned and specifically asked to see a two-carat diamond ring. He explained that he had "just won the lottery," and had "money burning a hole in his pocket." Downing finally showed him the two-carat diamond ring. While looking at the ring, Crouch asked for a bottle of water. After Downing said she did not have bottled water, Crouch got upset and again left the store. Downing became suspicious and called the owner to inform him of the situation. The store's owner instructed her to review the video recording from the store's security camera, and get pictures of Crouch.
About thirty to forty-five minutes later, as Downing was reviewing the surveillance footage, Crouch returned to the store. Before greeting him, Downing snapped a picture of Crouch with her cell phone. Crouch asked to see the same two-carat diamond ring he had viewed previously; he also asked for a loupe (a magnifier used to view jewels in greater detail). Downing handed Crouch the ring and a loupe. Rather than holding the diamond up to a light source to properly view it with the loupe, Crouch hunched over the display case, away from the light.
Downing briefly stepped away to retrieve the store owner's phone number, so that she could alert him to the situation. As she did, Crouch turned his back and switched the two-carat diamond ring with a fake ring. When Downing returned, Crouch gave her the fake ring, but she immediately knew it was not the store's ring. Although she could tell that significant effort had been expended to make the fake ring look like the genuine ring, Downing testified that the tag on the fake ring was slightly different than the tag on the genuine ring, the weight was different, and the ring looked slightly different.
Downing grabbed Crouch's arm and confronted him about his substitution of a fake ring for the store's ring. Crouch feigned ignorance, swatted Downing's arm away, and walked out of the store. Downing chased after him and saw Crouch dive head-first into the passenger seat of a light blue car, which then drove away.
*649 In addition to her interactions with Crouch, Downing was also suspicious of prior dealings she had had in the store with Pace. Downing suspected that the two men were working together, even though she had never seen them together. Through surveillance footage, Downing was able to identify four separate occasions on which she saw Pace at Glasscock Jewelry. Pace was helped by another employee on the first occasion. Downing remembered that, like Crouch, Pace asked to see the store's largest diamond ring. Pace claimed that he was looking for a ring for his daughter who was getting married. Pace looked at the ring, which was the same one that was later stolen, using a loupe, but ended up not purchasing or taking the ring.
Downing witnessed Pace attempt to visit the store a second time about a week later, but the store was closed. Pace went around the store looking in the windows, and then left.
On a third occasion, Pace looked at the two-carat ring for about forty-five minutes. Downing testified that, during this visit, Pace
was acting nervous again, wouldn't make eye contact, wouldn't really engage in a lot of conversation which was odd to be in there for so long and not really have a lot to say. He kept on clenching his hands, which I thought was really odd. He said he was diabetic and he was feeling sick, so he went over to the front case with that diamond clutched in his hand and got some chocolate and was even opening the chocolate with one hand and kind of popping it into his mouth. When he said he was sick, as I said, he just didn't look quite right. I went to the back and got a bottle of my water that I bring for lunch and gave it to him.
Three or four days later, Pace returned to the store a fourth time. He looked at the two-carat diamond ring, as well as other rings, for thirty or forty-five minutes. Although it was the middle of July, Pace wore a hooded sweatshirt and a hat, which Downing thought was odd. Pace also generally kept his hands in his pockets and "had his hands clutched a lot." Pace used a loupe in the same "incorrect" manner as Crouch. Downing expressed her concerns about Pace to the store's owner.
The same day as Crouch's theft at Glasscock Jewelry (July 17, 2014), Officer Harold Echols, with the Independence Police Department, was notified of suspicious activity at the Helzberg Diamonds store in the Independence Center shopping mall. Store personnel reported that they believed someone was trying to substitute a fake diamond for a real diamond.
Officer Echols responded to the mall's parking lot along with mall security. He saw two men in the parking lot standing close together talking. The two men were later identified as Pace and Crouch. As Officer Echols approached in a marked police vehicle, the two men noticed him and started walking away from each other. Crouch then started to run. Officer Echols radioed for assistance to help in apprehending Crouch, and then went to talk to Pace. After explaining why he was there, Officer Echols asked Pace for permission to search him. Pace consented, and Officer Echols found a set of keys and several business cards for jewelry stores in Pace's pockets. Pace stated that he did not have a car, and that "the keys didn't fit anything, they didn't belong to anything." Pace told Officer Echols that he had gotten a ride to the mall, and that he was "spending other people's money and buying jewelry to sell to these other people."
While Officer Echols was talking with Pace, Independence Police Officer Nick Logan responded to the request for assistance and apprehended Crouch. During a *650 consent search of Crouch, Officer Logan found a ring box which contained a small ring.
Pace initially said that he did not know Crouch, but then admitted that he "kind of halfway" knew him. Pace initially said that the jewelry box was not his, but then stated that it "was in fact his, that he was mistaken and he wanted it back."
The officers did not arrest Pace or Crouch. Instead, Officer Echols retained the keys and ring box, but released the men with the instruction that they not return to mall property.
Approximately two hours later, mall security notified Officer Echols that there was an abandoned vehicle in the parking lot, close to where Officer Echols had previously encountered Pace and Crouch. Officer Echols responded to the parking lot with the keys he had seized from Pace. The keys unlocked the abandoned car. Officer Echols had the car towed because it was abandoned and was part of his investigation. Officers performed an inventory search on the vehicle before it was towed, which Officer Echols testified was in accordance with "department policy."
Officer Echols testified that the following items were found in the car:
various junk jewelry, miscellaneous collectible coins ... loose imitation diamonds in a small bag with other jewelry, binoculars, AR optics, miscellaneous keys, an engraver, scales, a label maker and small white circular tags, some jeweler's tools, small instruments, magnifiers ... [and] tool bags with lots of miscellaneous junk tools....
Officer Echols took the ring recovered from Crouch to the mall to have it examined. When he took the ring out of its box, he found a loose stone underneath the setting. Although the ring turned out to be fake, the loose stone concealed underneath it was in fact a diamond, and Downing was later able to confirm that it was the two-carat stone stolen from Glasscock Jewelry.
Pace was charged with the class C of felony of stealing property valued at over $500, in violation of § 570.030. The information stated that Pace, acting alone or in concert with another, appropriated a two-carat diamond ring from Glasscock Jewelry with the purpose to deprive them thereof. Pace was charged as a persistent offender.
Pace filed a Motion to Suppress arguing, inter alia, that the seizure of the keys found on his person, and the search of the abandoned vehicle, were unlawful, and that all evidence obtained as a result of the unlawful search and seizure should be suppressed. Following a suppression hearing, the court overruled Pace's motion to suppress. Pace objected at trial when Officer Echols testified as to the property found during the inventory search of the abandoned vehicle.
Following a two-day trial, a jury found Pace guilty of stealing property valued at over $500. The circuit court sentenced Pace to eight years' imprisonment.
Pace appeals.
Discussion
On appeal, Pace argues that the trial court erred in convicting him of felony stealing, a point the State concedes. Pace also argues that the police illegally seized the keys found on his person, and then illegally searched the car to which the keys belonged. He contends that any evidence derived from the unlawful seizure and search should have been suppressed, and that he is entitled to a new trial because of the erroneous admission of this evidence.
I.
In his first Point, Pace argues that the trial court erred in entering judgment *651 for the offense of felony stealing, and, therefore, erred in sentencing him to eight years' imprisonment. The State concedes that, in light of the Supreme Court's decision in State v. Bazell , 497 S.W.3d 263 (Mo. banc 2016), the circuit court plainly erred in convicting and sentencing Pace for felony stealing.
At the time of the underlying offense, § 570.030 read in relevant part as follows:
1. A person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion.
....
3. Notwithstanding any other provision of law, any offense in which the value of property or services is an element is a class C felony if:
(1) The value of the property or services appropriated is five hundred dollars or more but less than twenty-five thousand dollars.
...
9. Any violation of this section for which no other penalty is specified in this section is a class A misdemeanor.
Pace was convicted of felony stealing based on the allegation that the property that he stole had a value greater than $500, and that his offense was therefore subject to enhancement under § 570.030.3(1).
In State v. Bazell , 497 S.W.3d 263 (Mo. banc 2016), the Missouri Supreme Court held that "[t]he value of the property or services appropriated is not an element of the offense of stealing" as defined in § 570.030.1, id. at 266, and that the offense of stealing was therefore not subject to enhancement to a class C felony under § 570.030.3. Id. at 266-67 ; see also State v. Smith , 522 S.W.3d 221, 229-31 (Mo. banc 2017) (applying the holding of Bazell to a stealing offense which was enhanced to a felony based on the theft of property having a value of more than $500).[3]
The State concedes that, under Bazell , the circuit court plainly erred by convicting and sentencing Pace for felony stealing. We agree: under Bazell and Smith , Pace's stealing offense could not be enhanced to a felony by operation of § 570.030.3(1). We reverse Pace's felony stealing conviction and remand for entry of a conviction of misdemeanor stealing, and resentencing accordingly.
II.
In his second and third Points, Pace argues that Officer Echols illegally seized the car keys found on his person, and then used those keys to illegally search the abandoned vehicle found in the mall parking lot. Pace contends that the trial court erred in admitting evidence derived from the unlawful search and seizure, and that he is entitled to reversal of his conviction and a new trial.
It is unnecessary for this Court to determine whether Officer Echols' seizure of the car keys from Pace, or the police's subsequent search of the car, were unlawful, or whether evidence derived from that search and seizure should have been suppressed. Even if the circuit court erroneously admitted evidence from the search and seizure, the admission of that evidence was harmless beyond a reasonable doubt, and does not justify a new trial, in light of the overwhelming other evidence establishing Pace's guilt.
*652 Where the erroneous admission of evidence involves a violation of state or federal constitutional provisions,
the judgment of guilt can be affirmed only if it is shown that the error was harmless beyond a reasonable doubt. Dawson [v. Delaware ], 503 U.S. [159,] at 166-67, 112 S.Ct. 1093 [117 L.Ed.2d 309 (1992) ] ; Chapman v. California , 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). As the Supreme Court more recently has instructed, "the test for determining whether a constitutional error is harmless ... is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained,' " and further, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." Neder v. United States , 527 U.S. 1, 15-16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).
State v. Driscoll , 55 S.W.3d 350, 356 (Mo. banc 2001) ; accord , State v. Whitfield , 107 S.W.3d 253, 262 (Mo. banc 2003), superseded on other grounds by State v. McLaughlin , 265 S.W.3d 257, 262 (Mo. banc 2008).
Despite the alleged constitutional violation in the admission of evidence derived from the vehicle search, we conclude that the admission of that evidence-even if erroneous-was harmless beyond a reasonable doubt. The evidence of Pace's guilt in this case was overwhelming. The evidence overwhelmingly established that Crouch stole a two-carat diamond ring from Glasscock Jewelry. The evidence also established that, prior to Crouch's theft, Pace had visited the same store on multiple occasions, had acted suspiciously while in the store, and had asked for the two-carat ring, and then studied it for extended periods. Also, during Crouch's visits to the store, he engaged in multiple behaviors which were obviously patterned after Pace's earlier actions: Crouch asked for the largest diamond in the store, as Pace had done during his visits; Crouch asked for a bottle of water to get the store clerk to leave him unattended, inspired by the fact that Downing gave Pace a water bottle when he appeared to be sick; Crouch asked for a loupe to distract Downing; and he used the loupe incorrectly, in the same fashion as Pace.
Pace and Crouch were found together just a few hours after the Glasscock Jewelry robbery, after a report from a Helzberg Jewelry store of suspicious activity very similar to the theft at the Warrensburg store. When Pace and Crouch were approached by a marked police car and uniformed officer, they started moving away in different directions, and Crouch broke into a run. Pace initially lied and said he did not know Crouch, before begrudgingly admitting that he "kind of halfway" knew him. Pace initially denied that the ring box was his, only to later change his story and claim that the ring box was in fact his, and demand its return. Perhaps most significantly, the two-carat diamond stolen from Glasscock Jewelry was found in the ring box which Pace stated that he owned.
The evidence of Pace's guilt was overwhelming: Crouch was clearly the perpetrator of the jewelry theft; his actions leading to the theft were plainly patterned after Pace's earlier actions; Crouch and Pace were found together shortly after the robbery, and sought to distance themselves from one another both physically and by denying their connection; and Pace claimed ownership of the jewelry box in which the stolen diamond was found. In these circumstances, we can confidently conclude that the admission of evidence derived from the search of the abandoned car did not affect the outcome of the trial, even if we assume that the admission of that evidence was erroneous. Pace has therefore failed to establish grounds for *653 reversal based on the circuit court's denial of his motion to suppress, and we deny his second and third Points.
Conclusion
Pace's conviction for felony stealing is reversed, and the case is remanded to the circuit court for entry of a judgment of conviction of class A misdemeanor stealing, and for resentencing accordingly.[4]
All concur.

Statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2013 Cumulative Supplement.

In State ex rel. Windeknecht v. Mesmer , 530 S.W.3d 500 (Mo. banc 2017), the Missouri Supreme Court held that "the Bazell holding only applies forward, except those cases pending on direct appeal." Id. at 503. This case is pending on direct appeal, and therefore Bazell 's holding is fully applicable here.

Two motions were taken with the case. Pace's motion to proceed in forma pauperis is granted. His motion to remand the case to the circuit court is denied as moot.